IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BARROCA,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 19-cv-00699-MMC<br><br>**ORDER GRANTING DEFENDANT'S SECOND MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Re: Dkt. No. 22 |

Before the Court is defendant United States of America's "Second Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)," filed August 27, 2019. Plaintiff Robert Barroca has filed opposition, to which defendant has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

Plaintiff, a federal prisoner currently incarcerated at Federal Correctional Institution Beckley, in Beaver, West Virginia ("FCI Beckley"), alleges that medical professionals employed at the Bureau of Prisons ("BOP") have provided him with negligent medical care at various federal prisons.

In particular, plaintiff alleges that, in 2009 at a federal prison in Terre Haute,

---

[1] On September 27, 2019, the Court deemed the matter appropriate for determination on the parties' respective written submissions and vacated the hearing scheduled for October 4, 2019.

1   Indiana ("FCI Terre Haute"), he received negligent treatment, specifically, a failure to
2   perform recommended surgery for "severe popping, grinding, decreased range of motion,
3   and severe pain in his right elbow" (see First Amended Complaint ("FAC") ¶ 6). Plaintiff
4   further alleges such failure to provide surgery continued after his transfer, in May 2012, to
5   a federal prison in Lompoc, California ("USP Lompoc"), his transfer, in September 2014,
6   to a federal prison in Leavenworth, Kansas ("USP Leavenworth"), his transfer, in March
7   2017, to a federal prison in Victorville, California ("FCI Victorville"), his transfer, in
8   January 2018, to a federal prison in Terminal Island, California ("FCI Terminal Island"),
9   his transfer, in April 2018, to a federal prison in Lexington, Kentucky ("FMC Lexington"),
10  and his transfer to his current placement at FCI Beckley.[2]

Additionally, plaintiff alleges that, during his incarceration at USP Leavenworth, he was negligently treated for esophageal reflux disease, pain in his knees and left elbow, and an injury to his right foot, which negligent care allegedly continued at each of the federal prisons to which he was transferred thereafter.

Based on the above allegations, plaintiff asserts six Counts of medical negligence and seeks, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, compensatory and punitive damages, as well as attorney's fees and costs.

**DISCUSSION**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). By the instant motion, defendant seeks an order transferring the above-titled action to the District of Kansas.

At the outset, the Court finds the instant action could have been brought in the District of Kansas, given the numerous acts and omissions that are alleged to have occurred during plaintiff's incarceration at USP Leavenworth. See 28 U.S.C. § 1402(b)

---

[2] Plaintiff does not allege the date on which he was transferred to FCI Beckley.

(providing, for action under FTCA, venue is proper in district "where the act or omission complained of occurred"). The Court next addresses the question of convenience.

"A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir.), cert. denied, 531 U.S. 928 (2000). In that regard, the Ninth Circuit has provided a list of non-exclusive factors a district court "may consider," which, in addition to the convenience of the witnesses, include: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." See id. at 498–99. The Court addresses the relevant factors in turn.

The first factor, location of relevant agreements, is inapplicable here, as the instant action sounds in tort, rather than contract. Accordingly, the first factor weighs neither in favor of nor against transfer.

As to the second factor, familiarity with governing law, the Court expects the majority of plaintiff's claims will be decided under Kansas law, in that the tortious acts and omissions giving rise to those claims are alleged to have first occurred at USP Leavenworth. See Tekle v. United States, 511 F.3d 839, 853 (9th Cir. 2007) (providing federal courts, "in assessing the United States' liability under the FTCA, . . . are required to apply the law of the state in which the alleged tort occurred." (internal bracket omitted)); S.H. by Holt v. United States, 853 F.3d 1056, 1061–62 (9th Cir.) (holding that under the FTCA "an injury 'occurs' where it is first suffered, even if a negligent act later results in further or more serious harm"). In particular, Kansas law is controlling as to Counts Two, Three, Five and Six, as well as Count Four to the extent such claim is based on treatment other than for plaintiff's right elbow. To the extent Count Four is based on

3

treatment of plaintiff's right elbow, such claim, along with Count One, which is entirely based on plaintiff's right elbow, will be governed by the law of Indiana, plaintiff having alleged such negligent treatment first occurred at FCI Terre Haute. In short, the majority of the causes of action alleged in the complaint will be decided under Kansas law, and, consequently, the District of Kansas is likely the district "most familiar with the governing law." Accordingly, the second factor weighs in favor of transfer.

As to the third factor, plaintiff's choice of forum, plaintiff alleges he was a resident of the Northern District of California ("Northern District") prior to his incarceration and that he intends to relocate to such district, either through his request for transitional "Residential Re-entry Center" placement in 2019 (see Opp'n at 5:22-23) or following his anticipated release from BOP custody in July 2020. Plaintiff, however, has resided outside the Northern District since at least September 15, 2005,[3] on which date, plaintiff alleges, he was in federal custody in Oklahoma, en route to FCI Terre Haute. And although plaintiff alleges "the vast majority of the negligent care [he] complains about . . . has occurred within California" (see FAC ¶ 1), most of plaintiff's allegations concern events in Kansas, not California, and the only tortfeasors he names in his complaint are alleged to have provided treatment in Kansas. Further, although plaintiff alleges he was subjected to negligent medical care while incarcerated in California, namely at USP Lompoc, FCI Victorville, and FCI Terminal Island, all of those prisons are located in the Central District of California, not in this district, which is situated a substantial distance to the North. Under such circumstances, plaintiff's choice of forum is entitled to "little deference." See Vivendi SA v. T–Mobile USA Inc., 586 F.3d 689, 693 (9th Cir.2009) (holding district court did not err in giving "little deference" to foreign corporation's choice of Washington State as forum; noting action brought "far from home" and "related to European transactions"); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987) (holding

---

[3] Plaintiff states he has been in federal prison for "twenty plus years" (see Opp'n at 6:19), but does not state where he was incarcerated prior to 2005.

4

where "operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration"). Accordingly, the third factor weighs only slightly against transfer.

As to the fourth and fifth factors, contacts with the forum, plaintiff, as noted, has not resided in the Northern District since at least 2005, and none of the negligent conduct is alleged to have occurred in the Northern District. By contrast, plaintiff was incarcerated in Kansas from 2014 to 2017, and the majority of plaintiff's allegations concern events occurring in that state. Thus, although plaintiff alleges he resided in this district prior to his incarceration and intends to return here after his release from prison, such contacts are attenuated, being unrelated to his claims and considerably in the past (or, at best, anticipatory), whereas his contacts with Kansas are directly related to his claims and far more recent. Accordingly, the fourth and fifth factors weigh in favor of transfer.

As to the sixth factor, differences in the cost of litigation, plaintiff argues he is "about to be released from federal prison" and that requiring him to "travel to Kansas to participate in discovery and prosecute this action would be cost prohibitive" (see Opp'n at 6:19–21); plaintiff additionally notes that he will face limitations on his travel as a condition of his supervised release.[4] Plaintiff's counsel, however, lists his law office at an address in Vermont, which is considerably closer to Kansas than it is to California, and, as counsel likely will be making, on plaintiff's behalf, most, if not all, of any court appearances, a transfer to Kansas likely will reduce plaintiff's costs. Additionally, as to the five medical professionals plaintiff alleges negligently treated him at USP Leavenworth, defendant has submitted uncontested evidence that three still reside in Kansas and, according to defendant, are likely to be called as witnesses. Consequently, if these three witnesses are deposed, their depositions likely will be taken in Kansas, thus requiring plaintiff's counsel to travel to Kansas irrespective of whether venue is

---

[4] Defendant does not expect its travel costs to be affected by the forum, as the case likely will be assigned to a government lawyer who resides in the forum.

5

transferred.

Moreover, "[g]enerally, litigation costs are reduced when venue is located near the most witnesses expected to testify[.]" Park v. Dole Fresh Vegetables, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013). Although plaintiff asserts testimony will be needed from witnesses who are or were employed at each institution wherein he allegedly was subjected to negligent medical care, i.e., federal prisons in Oklahoma, Indiana, California, Kansas, Kentucky and West Virginia, he has not identified any such witness, nor has he named in his complaint any alleged tortfeasors located outside of Kansas, and, in any event, the costs of travel associated with any such witnesses, other than those residing in the Central District of California, would likely be reduced were venue transferred to the District of Kansas, which is closer to each of the other states.[5] Accordingly, the sixth factor weighs in favor of transfer.

As to the seventh factor, compelled attendance, although, as noted, plaintiff asserts witnesses from federal prisons in six states will be necessary, he has not identified any non-party witnesses. Further, even assuming medical practitioners or other arguably non-party witnesses who are or were employed at federal prisons located in the Central District of California will be called as witnesses, plaintiff does not allege any such witnesses would be unwilling to travel to Kansas to testify. Although defendant, as noted, has identified three non-party witnesses who reside in Kansas, defendant likewise has not stated any such non-party witness would be unwilling to travel to California to testify.[6] Accordingly, the seventh factor weighs neither in favor of nor against transfer. See

---

[5] As no events relevant to this action are alleged to have occurred in this district, it is unlikely that any potential witnesses reside here.

[6] Moreover, because defendant has not provided any details as to the expected testimony of the nonparty witnesses, the Court cannot determine whether the absence of live testimony by such witnesses is likely to prejudice defendant. See, e.g., Brandon Apparel Group, Inc. v. Quitman Manufacturing Co., 42 F.Supp.2d 821, 834 (N.D. Ill., 1999) (holding, where party did not provide court with information necessary to evaluate nature and quality of non-party witnesses' expected testimony, party failed to establish factor weighed in favor of transfer).

6

Sorensen v. Daimler Chrysler AG, 2003 WL 1888866 at *4 (N.D. Cal. Apr. 11, 2003) (finding seventh factor weighed in favor of neither party where neither "assert[ed] that any non-party witness is unwilling to travel").

As to the eighth factor, ease of access to sources of proof, to the extent such sources are spread across six states, from California to West Virginia, access to some of that material may not be readily available irrespective of the forum. See Park, 964 F. Supp. 2d at 1095 (noting "[a]lthough developments in electronic conveyance have reduced the cost of document transfer somewhat, costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored"). Nevertheless, as none of the alleged events occurred in the Northern District, and most of those events occurred in Kansas, considerably more sources of proof are likely to be readily accessible in Kansas than in the Northern District. Accordingly, the eighth factor weighs in favor of transfer.

Lastly, the Court considers the convenience of party and non-party witnesses, giving more weight to the convenience of non-party witnesses. See Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (noting "the convenience of non-party witnesses is a more important factor than the convenience of party witnesses"). The convenience of witnesses is "often the most important factor in resolving a motion to transfer." Park, 964 F. Supp. 2d at 1095. "[U]nidentified witnesses," however, "have little impact on the transfer determination because it is difficult to evaluate the role of these witnesses and realize the impact of a venue change on their function." Stewart v. Jos. A. Bank Clothiers, Inc., 2010 WL 545846, at *3 (N.D. Cal. Feb. 11, 2010) (internal quotation and bracket omitted). Here, as noted, plaintiff has not identified any witnesses he may call to testify, let alone any witness, other than himself, who would find it more convenient to appear in the Northern District. On the other hand, defendant has identified, as non-party witnesses residing in Kansas, three medical practitioners who are described as tortfeasors in plaintiff's complaint; those individuals, the only non-party witnesses to have been identified, would be inconvenienced if required to testify in the Northern District.

Moreover, as noted above, regardless of where any other witnesses reside, none of the prisons in which the alleged negligent treatment occurred is located in this district, and, consequently, no witness is likely to reside here. Accordingly, the Court finds the convenience of the witnesses weighs in favor of transfer.

In sum, six of the above-discussed factors weigh in favor of transfer, one factor weighs only slightly against transfer, and the remaining two factors weigh neither in favor of nor against transfer. Significantly, no factor weighs substantially in favor of the action proceeding in the Northern District of California, given that none of the parties currently resides in this district, none of the events giving rise to the instant dispute occurred in this district, no potential witness currently resides in this district, and no party has identified any potential evidence located in this district. Accordingly, the Court finds it appropriate to transfer the instant action to the District of Kansas.

## CONCLUSION

For the reasons stated above, defendant's Second Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) is hereby GRANTED, and the instant action is hereby TRANSFERRED to the District of Kansas pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

Dated: November 5, 2019

MAXINE M. CHESNEY
United States District Judge