IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT BARROCA,

     **Plaintiff,**

v.

UNITED STATES OF AMERICA,

     **Defendant.**

Case No. 19-2688-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Robert Barroca brings this pro se[1] medical negligence action against defendant, the United States of America, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Doc. 36. Plaintiff seeks to recover damages for injuries that, he contends, he sustained from negligent medical care while in custody of the Federal Bureau of Prisons ("BOP"). *Id.* This matter is before the court on defendant's Motion for Partial Dismissal or, in the Alternative, Motion for Partial Summary Judgment (Doc. 40). Defendant contends that the court lacks subject matter jurisdiction over plaintiff's claims because plaintiff has failed to exhaust administrative remedies, as the FTCA requires. Defendant also argues many of plaintiff's claims are time barred by the FTCA's two year statute of limitations and Kansas's four year statute of repose. Plaintiff filed a Response (Doc. 50) and defendant has filed a Reply (Doc. 52). For reasons explained below, the court grants defendant's motion in part and denies it in part.

---

[1]     Because plaintiff proceeds pro se, the court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not act as plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for plaintiff or search the record. *Id.*

# I.      Legal Standards

Defendant asks the court to dismiss, or in the alternative, grant summary judgment

against some of plaintiff's claims asserting both jurisdictional arguments and arguments that

plaintiff has failed to state a claim.

## A.      Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction

Defendant argues the court lacks subject matter jurisdiction over many of plaintiff's

claims because he failed to satisfy the FTCA's jurisdictional pre-suit notice requirement.

Because federal courts are courts of limited jurisdiction, a presumption against

jurisdiction exists, and the party invoking federal jurisdiction bears the burden to prove it exists.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "Motions to dismiss for

lack of subject matter jurisdiction 'generally take one of two forms:  (1) a facial attack on the

sufficiency of the complaint's allegations [about] subject matter jurisdiction; or (2) a challenge to

the actual facts upon which subject matter jurisdiction is based.'"  *City of Albuquerque v. U.S.*

*Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (quoting *Ruiz v. McDonnell*, 299 F.3d

1173, 1180 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003)).  If the motion only challenges

the jurisdictional allegation's sufficiency, the district court must accept all such allegations as

true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  But the analysis differs if the

movant goes beyond the complaint's allegations and challenges the facts on which subject matter

jurisdiction depends.  In that circumstance, a court "may not presume the truthfulness of the

complaint's factual allegations" and "has wide discretion to allow affidavits [and] other

documents . . . to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.* at 1003.

Considering material outside the pleadings does not require a court to convert a Rule

12(b)(1) motion to dismiss into one seeking summary judgment under Rule 56 unless resolving

"the jurisdictional question is intertwined with the merits of the case." *Id.* (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 & n.5 (10th Cir. 1987), *cert. denied*, 484 U.S. 986 (1987)).  The jurisdictional question is intertwined with the merits of the case if "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."  *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

As explained below, to consider defendant's Rule 12(b)(1) failure to exhaust argument, the court must examine plaintiff's Administrative Claim attached to defendant's motion.  This is so because plaintiff failed to attach or otherwise claim he submitted an administrative claim.  *See* Doc. 36.  But resolving defendant's 12(b)(1) motion doesn't require the court to address the case's merits—*i.e.*, the merits of plaintiff's negligent medical care claims.  So, considering the Administrative Claim does not require the court to convert the portion of defendant's motion seeking dismissal under Rule 12(b)(1) into one seeking summary judgment under Rule 56.  *Cf. Trobaugh v. United States*, 35 F. App'x 812, 814–15 (10th Cir. 2002) (holding district court properly treated Rule 12(b)(1) motion arguing FTCA's statute of limitations had expired as a Rule 12(b)(1) motion rather than converting it to a summary judgment motion because the FTCA "statute of limitations" wasn't "intertwined with the merits" of the case); *Gonzalez v. United States*, 284 F.3d 281, 287–88 (1st Cir. 2002) (concluding facts relevant to timeliness of plaintiff's claims and whether court had subject matter jurisdiction don't go to the merits of plaintiff's medical malpractice FTCA claim and district court thus was not required to convert Rule 12(b)(1) motion to a Rule 56 motion despite considering materials outside pleadings); *Mechler v. United States*, No. 12-1183-EFM, 2013 WL 3989640, at *3 (D. Kan. Aug. 2, 2013) (finding facts relevant to the timeliness of plaintiff's FTCA claims don't go to the merits of the private nuisance claim and so the court need not convert a motion for summary judgment).

Consistent with these holdings, the court determines the jurisdiction question under Rule 12(b)(1) and the FTCA in Part III.A., below.

### B. Motion to Dismiss under Rule 12(b)(6) or, Alternatively, Motion for Summary Judgment under Rule 56

Unlike a Rule 12(b)(1) motion, when a court considers a matter outside the pleadings for a Rule 12(b)(6) motion, the court must convert the motion into one for summary judgment. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). As explained more below, to consider defendant's argument that plaintiff failed to state plausible claims for some of the allegations in the Second Amended Complaint because the claims are untimely, the court must consider a matter outside of the pleadings—plaintiff's Administrative Claim.

The court may convert a motion to dismiss under Rule 12 into a motion for summary judgment if plaintiff had explicit notice that the district court intended to do so. *See Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006). When a defendant styles its motion as a motion to dismiss, or, alternatively, one seeking summary judgment and includes materials outside the complaint—as defendant did here—our Circuit has held plaintiff received the requisite explicit notice. *Id.* The Circuit also considers whether plaintiff's response clearly demonstrates that "he [is] aware that the motion would be converted to a Rule 56 motion for summary judgment." *Id.*

Here, defendant styled its motion as a Motion for Partial Dismissal, or in the Alternative, Motion for Partial Summary Judgment. Doc. 40. And, defendant provided plaintiff with a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment on April 8, 2020. *See* Doc. 42. This notice informed plaintiff that if he didn't respond with evidence contradicting the facts asserted by defendant then the court could accept defendant's facts as true. *Id.* at 1–2. The notice attached Fed. R. Civ. P. 56 and D. Kan. Rule 56.1, as D. Kan. Rule 56.1(f) requires.

Docs. 42-1, 42-2.  Plaintiff's Response to defendant's motion incorporates and discusses the exhibits attached to defendant's motion and doesn't challenge any of defendant's statement of facts.  *See* Doc. 50 at 2, 6–9.  Plaintiff also explicitly refers to defendant's motion as one seeking dismissal or summary judgment.  *See id.* at 1–2.  Plaintiff's Response thus demonstrates plaintiff was aware that the court could convert the motion into one for summary judgment.  Because the record shows plaintiff received the required explicit notice that the court could convert defendant's motion into one for summary judgment, the court considers defendant's arguments about the timeliness of plaintiff's claims under Rule 56's summary judgment standard.

"Summary judgment is proper if the moving party shows 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *United States v. Distefano*, 279 F.3d 1241, 1243 (10th Cir. 2002) (quoting Fed. R. Civ. P. 56(a)).  "When applying this standard, [the court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Id.* (citation and internal quotation marks omitted).

"At summary judgment, the moving party carries the initial burden of demonstrating a lack of genuine issue of material fact, which it may satisfy by showing an 'absence of evidence to support the nonmoving party's case.'"  *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)).  Then, if the moving party satisfies its initial burden, "the burden shifts to the nonmoving party 'to set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Schneider*, 717 F.3d at 767).  "'A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury

could find in favor of the nonmoving party on the evidence presented.'" *Id.* (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).

Finally, summary judgment is not a "disfavored procedural shortcut[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1). "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

## II.     Factual Background

The following facts either are uncontroverted or, where genuinely controverted, stated in the light most favorable to plaintiff—the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007). Defendant adopts the Second Amended Complaint's facts for its arguments that plaintiff hasn't administratively exhausted his claims and that plaintiff's claims are time barred. *See* Docs. 41, 52.

### A.     Plaintiff's Administrative Claim

The following facts come from defendant's motion and attached exhibits. Plaintiff has not controverted any of them. *See* Docs. 41, 41-1. Also, plaintiff doesn't challenge the authenticity of the exhibits or underlying facts asserted in defendant's motion. *See* Doc. 50.

Plaintiff filed one administrative claim arising from his medical care while in BOP custody, which the BOP received on January 19, 2018 (the "Administrative Claim"). Doc. 41-1 at 5 (Todd Decl. ¶ 9); *see also* Doc. 41-1 at 28 (Admin. Claim); Doc. 41-1 at 45 (letter notifying plaintiff the Administrative Claim was received). Plaintiff claimed damages of $1,000,000 based on negligent medical care received while in BOP custody and described the nature of his injuries forming the basis of his claims as follows:

6

> The BOP has and continues to negligently treat Barroca's medical needs as outlined in the complaint filed in Barroca v. Aulepp, et. al., No. 2:16-cv-02822 (D. Kan). The BOP has neglected and continues to neglect Barroca's medical issues with respect to his knees, elbows, GERD, and pain.

*Id.* at 28 (Admin. Claim).  Where the administrative claim form asked for a description of the "known facts and circumstances attending the . . . injury, . . . identifying persons . . . involved, the place of occurrence and the cause thereof[,]" plaintiff cross referenced an attached *Bivens* complaint from an earlier civil action he'd filed.  Doc. 41-1 at 5 (Todd Decl. ¶ 9); *see also* Doc. 41-1 at 28–43 (Admin. Claim attaching *Bivens* Compl.); Complaint, *Barroca v. Aulepp*, No. 2:16-cv-2822-CM-TJJ (D. Kan. Dec. 20, 2016), ECF No. 1.[2]

The *Bivens* complaint attached to plaintiff's Administrative Claim lists seven defendants: (1) Kristine Arnold Aulepp, Doctor of Osteopathy and Clinical Director at United States Penitentiary ("USP") Leavenworth; (2) Jason Clark, Doctor at USP Leavenworth responsible for providing medical care to inmates; (3) David Campbell, retired medical provider at USP Leavenworth; (4) Mulugheta Berhane, a retired medical provider at USP Leavenworth; (5) Justin Blevins, Health Services Administrator at USP Leavenworth; (6) Lisa Gregory, the Regional Health Services Administrator for the North Central Region of the BOP responsible for responding to all appeals related to medical care at USP Leavenworth; and (7) the Federal Bureau of Prisons.  Doc. 41-1 at 31–33.

Plaintiff's *Bivens* complaint describes pain in his right elbow starting in May 2008.  *Id.* at 33.  After plaintiff "experienced severe popping, grinding, decreased range of motion, and severe pain in his right elbow . . . the BOP referred to [plaintiff] to an orthopedic specialist" while plaintiff was housed at USP Terre Haute.  *Id.*  "On or about May 21, 2009, the orthopedic

---

[2]       The district court granted summary judgment against plaintiff's *Bivens* claims on May 22, 2018. Memorandum and Order, *Barroca v. Aulepp*, No. 2:16-cv-2822-CM-TJJ (D. Kan. May 22, 2018), ECF No. 43.

specialist who saw [plaintiff] recommended that [plaintiff] undergo surgery to remove

osteophytes, more commonly known as bone spurs, from [plaintiff]'s right elbow." *Id.* "On or

about June 4, 2009, [plaintiff] was approved by the BOP for the recommended surgical

procedure on his right elbow[,]" but, plaintiff's *Bivens* complaint alleges, "the procedure was

never performed and [plaintiff] was transferred to FCI Lompoc." *Id.* at 33–34.  The *Bivens*

complaint asserts that "BOP Officials at FCI Lompoc also failed to perform the recommended

surgical procedure on [plaintiff]'s elbow or provide other constitutionally adequate care for

same." *Id.* at 34.  Plaintiff was then transferred to USP Leavenworth where he continued to

complain of pain in his right elbow. *Id.*

Then, plaintiff focuses most of his *Bivens* complaint attached to the Administrative Claim

on the allegedly negligent care he received while housed at USP Leavenworth and named

defendants' continued refusal to treat plaintiff's described ailments. *See id.* at 34–43.  He

describes the role each named *Bivens* defendant played in his alleged negligent care with details.

*See id.* Plaintiff alleges no facts about care or treatment at any facility after USP Leavenworth.

*See id.* Nor does plaintiff include any specific allegations about who provided medical care for

him at USP Terre Haute or Federal Correctional Institution ("FCI") Lompoc or how their actions

were negligent.  Instead, as described above, his Administrative Claim generally asserted that he

didn't receive the approved surgery for his elbow at these facilities.

The BOP denied plaintiff's Administrative Claim on August 8, 2018.  Doc. 41-1 at 47.

**B.  Timeline of Plaintiff's Injuries in Second Amended Complaint**

The following facts come from plaintiff's Second Amended Complaint.  Defendant has

not controverted plaintiff's claims in the Second Amended Complaint for purposes of its

arguments that plaintiff failed to administratively exhaust his claims and that his claims are time barred.  *See* Docs. 41, 52.

i.    *Medical Care Before Plaintiff's Transfer to Leavenworth*

Plaintiff's Second Amended Complaint provides more details about his medical care at USP Terre Haute and FCI Lompoc than did his Administrative Claim.  In 2005, while plaintiff was housed at USP Terre Haute in Indiana, he "started experiencing severe popping, grinding, decreased range of motion and severe pain in his right elbow."  Doc. 36 at 3 ¶ 7.  He continued to complain about right elbow pain and by March 2006, he couldn't straighten his arm.  *Id.* ¶¶ 8–9. Plaintiff "was referred for an orthopedist consultation" and he met with Dr. Burkle on April 13, 2006.  *Id.* ¶ 9.  Dr. Burkle noted plaintiff suffered "from pain and loss of range of motion."  *Id.* On June 22, 2006, plaintiff saw Dr. Burkle again, and he noted plaintiff "appear[ed] to have an old fracture of the cornoid process at the elbow and arthritis."  *Id.* ¶ 10.  Plaintiff was offered a "corticosteroid cortisone injection" but plaintiff refused it because "[c]ortisone does not heal the joint but actually makes it worse by deteriorating cartilage and weakening tendons and ligaments subjecting them to rupture."  *Id.*  Dr. "Burkle refused to recommend [a]n MRI or CT Scan" and would consider such a recommendation only if plaintiff's injury worsened.  *Id.*

On August 6, 2007, plaintiff "was seen by another orthopedic surgeon, Dr. Edwards from AP&S Bone and Joint Center" for his right elbow.  *Id.* ¶ 11.  Dr. Edwards noted plaintiff's injuries and limited range of motion.  *Id.* at 4 ¶ 11.  Dr. Edwards "ordered an MRI be performed and possible scope of the elbow but neither was performed."  *Id.*  Plaintiff continued to complain of the pain in his elbow and about the lack of treatment.  *Id.* ¶ 12.  On April 13, 2009, plaintiff was told "the MRI and Scope had been 'deferred'" by the facility's Utilization Review Committee who concluded it wasn't "medically necessary."  *Id.* ¶ 13.

9

Then, on May 21, 2009, plaintiff "was seen by another orthopedic surgeon, D. Gary Ulrich, DO." *Id.* ¶ 14.  Dr. Ulrich also recommended a scope surgery for plaintiff's right elbow. *Id.*  In June 2009, the Utilization Review Committee approved the surgery, but it was never performed. *Id.* ¶ 15.

On May 18, 2011, plaintiff was transferred from USP Terre Haute to FCI Lompoc in California. *Id.* at 4–5 ¶ 16.  Plaintiff continued to complain of right elbow pain. *Id.*  He was seen by another orthopedic surgeon at FCI Lompoc, Dr. Gill, who recommended a CT scan. *Id.*  On June 16, 2011, the Clinical Director recorded that the CT scan was submitted for regional approval. *Id.* at 5 ¶ 17.  But, the request actually wasn't submitted until August 24, 2012, after plaintiff continued to inquire about the scan. *Id.*  "The CT scan of the right elbow was finally performed on March 19, 2013." *Id.*  This CT scan revealed severe damage in plaintiff's right elbow. *Id.*  On November 12, 2013, "Dr. Gill agreed to do surgery to remove the ossification" but the surgery never was performed. *Id.* at 5–6 ¶ 18.

ii.    *Medical Care from USP Leavenworth from Transfer to January 2016[3]*

Months later, plaintiff was transferred to USP Leavenworth in Kansas. *Id.*  Plaintiff continued to complain "of pain and lack of range of motion" and plaintiff went to another orthopedic consultation. *Id.* at 6 ¶ 19.  Plaintiff also started to complain of pain in his left elbow. *Id.*  On November 14, 2014, plaintiff "saw another orthopedic specialist, Shane J. Alford" who diagnosed plaintiff with "severe degenerative osteoarthritis and loose bodies" in his right elbow and "developing degenerative osteoarthritis" in his left elbow. *Id.*  Plaintiff was referred to an

---

[3]    Defendant seeks summary judgment against some, but not all, of plaintiff's medical negligence claims arising while he was housed at USP Leavenworth.  The court has divided plaintiff's allegations about care at that facility into two groups.  This first group encompasses plaintiff's claims before January 2016 and includes the allegations in ¶¶ 19–30 of the Second Amended Complaint.  Defendant argues these claims are time barred.

upper extremity specialist.  *Id.* ¶ 20.  By November 2014, plaintiff "had been complaining about this condition and suffering for approximately 9 years" and "[h]e had been reviewed and consulted with 6 orthopedic specialists who all concluded the same condition existed and surgery needed to be performed."  *Id.* ¶ 21.

On December 1, 2014, plaintiff, while housed at USP Leavenworth, went to a consultation with Dr. Jason Clark.  *Id.* at 7 ¶ 23.  He again was diagnosed with "severe degenerative osteoarthritis of the right elbow and loose bodies" and "developing degenerative arthritis in his left elbow."  *Id.*  On February 3, 2015, plaintiff met with another orthopedic specialist, Dr. Brian Develbiss, about pain in his right elbow.  *Id.* ¶ 24.  Dr. "Develbiss did inform [plaintiff] that because his condition had not been resolved for almost a decade," plaintiff's "condition was now irreparable."  *Id.*

On April 8, 2015, plaintiff started complaining of "bilateral knee pain."  *Id.* ¶ 25.  Plaintiff went to sick call and Mr. Campbell, a registered nurse, diagnosed plaintiff with "'meniscus damage to the anterior lateral surface.'"  *Id.* at 7–8 ¶ 25.  Mr. "Campbell offered [plaintiff] a cortisone shot but again [plaintiff] refused, knowing cortisone would actually make it worse and further damage cartilage, tendons, and ligaments."  *Id.* at 8 ¶ 25.  Plaintiff "requested an injection of Euflexa" but Mr. Campbell refused the request.  *Id.*  "On June 3, 2015, Nurse Campbell confirmed that [plaintiff] had a possible cartilage tear in his right knee" and "[Nurse] Campbell further noted and acknowledged that [plaintiff] needed to be referred to an orthopedic specialist for review but refused to do so unless [plaintiff] took the cortisone shots in his knee."  *Id.* ¶ 28.

On May 7, 2015, plaintiff again complained of left elbow pain and visited with Dr. Clark.  *Id.* ¶ 26.  X-rays were taken on June 2, 2015, which revealed "'osteophyte formation[.]'"  *Id.*

¶ 27.  And plaintiff "requested orthopedic intervention to remove the osteophyte to release the pain and dispel any further damage." *Id.*  Plaintiff later discovered Dr. Clark had referred plaintiff to an orthopedic specialist for his left elbow on May 7, 2015, but, "the Clinical Director, Dr. Kristine Aulepp disapproved the request based on the fact [plaintiff] had not had any x-rays of his left elbow since 2010." *Id.* ¶ 29.  Dr. Aulepp still "refused to provide orthopedic specialist reviews" even after plaintiff's x-rays from June 2015 "revealed serious prominent osteophyte formation[.]" *Id.* at 8–9 ¶ 29.

"On September 2, 2015, [plaintiff] reported to medi[c]al with a tendon tear in his left elbow." *Id.* at 9 ¶ 30.  Dr. Clark noted the swelling, pain, and lack of range of motion in his left elbow. *Id.*  Dr. Clark ordered plaintiff to ice his elbow. *Id.*  "Despite this injury and known osteophyte formation and pain, no further orthopedic specialist review or treatment was provided." *Id.*

### iii.   *Medical Care at USP Leavenworth Between January 2016 and July 2016*[4]

"On January 25, 2016, [plaintiff] reported to medical with a broken right foot" after he "injured his foot on January 22, 2016 running down the stairs." *Id.* ¶ 31.  Nurse Campbell had refused to see plaintiff immediately after the injury. *Id.*  Physician Assistant ("PA") Burhane examined plaintiff's right foot and noted it was extremely swollen and black with severe

---

[4]     This second group of USP Leavenworth claims includes the allegations in ¶¶ 31–42 of the Second Amended Complaint. Doc. 36 at 9–11 ¶¶ 31–42.  Defendant's motion doesn't reach these claims.  Doc. 41 at 1, 13.  Defendant's motion states if the court were to grant its motion in full then "Plaintiff's remaining claims in this case are outlined in paragraphs 30-42 of the Second Amended Complaint and relate to treatment of his broken right foot and the Bureau of Prison's (BOP) refusal to prescribe Euflexa for knee pain." *Id.* at 1.  While defendant's brief refers to claims remaining as paragraphs 30–42, defendant later argues plaintiff's claims in paragraphs 19–30 of the Second Amended Complaint are time barred because they accrued more than two years before plaintiff's January 2018 Administrative Claim. *Id.* at 13.  And, paragraph 30 discusses plaintiff's elbow pain in 2015 (not his foot or knee), so the court deduces defendant intended to limit the unchallenged claims to those beginning in paragraph 31, not 30, because paragraph 31 begins plaintiff's allegations about his broken foot in January 2016.

bruising. *Id.* ¶ 32.  X-rays revealed plaintiff's right foot was broken.  *Id.*  PA Burhane informed plaintiff that Nurse Campbell should have assessed plaintiff's injury immediately.  *Id.*  "[PA] Burhane and another nurse, Mr. Troll casted [plaintiff]'s foot on January 26, 2016, however, both admitted to not knowing how to apply a cast and put it on wrong."  *Id.* ¶ 33.  Plaintiff continued to suffer from the cast improperly placed on his broken right foot.  *Id.* at 10 ¶¶ 34–37.  "On March 8, 2016, x-rays revealed that not only was the break in [plaintiff]'s foot not healing but it was actually getting worse."  *Id.* ¶ 38.  Dr. Clark re-cast plaintiff's foot and ordered him not to place weight on it, but didn't provide any means to follow those instructions.  *Id.* at 10–11 ¶ 38.  Due to medical negligence in treatment on plaintiff's broken right foot, "what normally would have healed in 3 months took over 6 months to heal and caused [plaintiff] significant pain."  *Id.* at 11 ¶ 41.

On July 22, 2016, plaintiff went to an orthopedic review where the orthopedist noted plaintiff still complained of knee pain in his right knee.  *Id.* ¶ 42.  Plaintiff reported that he refused to take cortisone shots for his knees because it worsens the injury.  *Id.*  The orthopedist "directed [plaintiff] be provided Euflexa" but BOP officials refused to provide Euflexa until plaintiff accepted cortisone shots.  *Id.*  No further treatment was provided for plaintiff's right knee.  *Id.* at 11–12 ¶ 42.

       iv.    *Medical Treatment Received After Plaintiff was Transferred from USP Leavenworth*

Plaintiff was transferred from USP Leavenworth to FCI Victorville in California on March 9, 2017.  *Id.* at 12 ¶ 43.  Plaintiff continued to report pain in his left and right elbows, but never was provided an orthopedic specialist consultation while housed at FCI Victorville.  *Id.* ¶¶ 44–47.

On January 3, 2018, plaintiff was transferred from FCI Victorville to FCI Terminal Island.  *Id.* ¶ 48.  On February 6, 2018, x-rays on plaintiff's right elbow revealed "'severe marginal osteophyte formation[.]'"  *Id.* ¶ 49.  On March 18, 2018, plaintiff's left elbow, with the previously torn tendon, popped while carrying legal materials.  *Id.* ¶ 50.  On April 2, 2018, plaintiff "received a CT scan regarding his left elbow and an orthopedic review."  *Id.* at 12–13 ¶ 51.  "The orthopedist informed [plaintiff] that he would do the surgery to remove osteophyte formations in his elbow."  *Id.*

Before performing the surgery, plaintiff was transferred from FCI Terminal Island to Federal Medical Center ("FMC") Lexington in Kentucky on May 22, 2018.  *Id.* at 13 ¶ 52.  In September 2018, new x-rays revealed severe osteophyte formations in both elbows.  *Id.* ¶ 53.  On November 28, 2018, plaintiff consulted with another orthopedic specialist, Dr. Casidy, "who noted both elbows were so severe, so degenerated from years of neglect that he referred [plaintiff] to an elbow specialist at the University of Kentucky."  *Id.* ¶ 54.  On January 28, 2019, plaintiff met with "APRN Natasha Gonzalez, and Dr. Carolyn Hettrick MD[.]"  *Id.* ¶ 55.  "Dr. Hettrich informed [plaintiff] that because of the severity of his condition, she did not believe surgery was an option that would help his condition."  *Id.*  Dr. Hettrick informed plaintiff that his condition had deteriorated beyond repair which was caused "by the continuous neglect and negligence" of BOP officials.  *Id.*

By the year 2019, "[plaintiff] had been attempting to obtain adequate medical care regarding his elbows since 2006 at the age of 42, over 12 years, multiple transfers, multiple orthopedic specialists, all attempting to perform surgery and now it is beyond repair."  *Id.* at 13–14 ¶ 56.

14

### III.    Discussion

Defendant raises two arguments in its Motion for Partial Dismissal, or, in the Alternative, Motion for Partial Summary Judgment.

*First*, defendant seeks dismissal of some of plaintiff's claims because, defendant contends, plaintiff did not exhaust his administrative remedies as required by the FTCA. Defendant argues this failure deprives the court of subject matter jurisdiction over the unexhausted claims.  Specifically, defendant argues that plaintiff's Administrative Claim only exhausted a subset of his claims—negligent medical care received at USP Leavenworth before January 19, 2018, the date when plaintiff filed his Administrative Claim.  Doc. 41 at 7–10.  So, defendant argues, the court has jurisdiction and thus can adjudicate only those claims for care at USP Leavenworth.  *Id.*  Paragraphs 19–42 of the Second Amended Complaint assert these claims.  *Id.*; Doc. 36.

*Second,* defendant argues most of plaintiff's claims are time barred and the court should grant summary judgment against them because there is no genuine dispute about the facts making plaintiff's claims untimely.  *Id.* at 10–14.  Defendant contends it thus deserves judgment as a matter of law on those claims.  *Id.*  Defendant argues the FTCA's two year statute of limitations bars many of plaintiff's claims which accrued before January 19, 2016—two years before plaintiff filed his Administrative Claim on January 19, 2018—because plaintiff knew he was injured and the cause of his injury.  *Id.* at 11–14.  Defendant also contends that Kansas's substantive law controls and the state's four year statute of repose bars any of plaintiff's claims for wrongful acts at USP Leavenworth occurring before February 8, 2015.  *Id.* at 10–11.

Defendant's motion doesn't seek summary judgment against plaintiff's claims described in paragraphs 31–42[5] of the Second Amended Complaint.  *Id.* at 1, 13.

Plaintiff responds that he has exhausted his administrative remedies for the claims listed in his Second Amended Complaint because he alleged facts sufficient in his Administrative Claim to give BOP notice about the negligent medical care received in BOP custody, including care at USP Terre Haute and FCI Lompoc.  Doc. 50 at 3–8.  Plaintiff never responds to defendant's argument that he failed to exhaust his claims based on care provided at FCI Victorville, FCI Terminal Island, or FMC Lexington.  *See id.*  Plaintiff also argues his claims aren't time barred because the continuing tort doctrine tolls the FTCA's two year statute of limitations.  *Id.* at 8–10.  Plaintiff contends his injuries didn't accrue until "the date of the unfulfilled promise for surgery and relief from pain that never came."  *Id.* at 10.  Plaintiff doesn't respond to defendant's argument that Kansas substantive law governs and its four year statute of repose bars some of plaintiff's claims.  *See id.*

The court first addresses defendant's failure to exhaust administrative remedies argument, which invokes Fed. R. Civ. P. 12(b)(1).  Then, the court considers defendant's argument that it is entitled to summary judgment against some of plaintiff's claims because they are time barred.

### A.     Lack of Subject Matter Jurisdiction for Failure to Exhaust

#### i.     Legal Standard

"'The FTCA waives the federal government's sovereign immunity to suits for money damages arising out of negligence of government agents.'"  *Bowling v. United States*, 740 F. Supp. 2d 1240, 1245 (D. Kan. 2010) (quoting *Barnes v. United States*, 137 F. App'x 184, 187

---

[5]     *See supra* note 4.

(10th Cir. 2005)).  But, "[a]s a jurisdictional prerequisite, the FTCA bars claimants from bringing

suit in federal court until they have exhausted their administrative remedies." *Duplan v. Harper*,

188 F.3d 1195, 1199 (10th Cir. 1999) (first citing 28 U.S.C. § 2675(a); then citing *McNeil v.*

*United States*, 508 U.S. 106, 113 (1993); then citing *Pipkin v. U.S. Postal Serv.*, 951 F.2d 272,

273 (10th Cir. 1991)); *see also Three-M Enters., Inc. v. United States*, 548 F.2d 293, 294 (10th

Cir. 1977) (explaining § 2675(a) "requires that the claim first be presented to the appropriate

federal agency and be finally denied by the agency before a court can exercise jurisdiction over

an FTCA action").  To satisfy the exhaustion requirement, a claimant must file an administrative

claim with the appropriate federal agency.  *Barnes*, 137 F. App'x at 187; *see also Moya v. United*

*States*, 35 F.3d 501, 503 (10th Cir. 1994).  The administrative claim must include:  "(1) a written

statement sufficiently describing the injury to enable the agency to begin its own investigation,

and (2) a sum certain damages claim." *Estate of Trentadue ex rel. Aguilar v. United States*, 397

F.3d 840, 852 (10th Cir. 2005) (citations and internal quotations marks omitted).

     The FTCA's notice requirement "is meant to inform the agency of the circumstances of

the incident so it can investigate and respond either by settlement or defense." *Selvidge v. United*

*States*, No. 93-4083-DES, 1994 WL 725399, at *3 (D. Kan. Dec. 30, 1994) (citing *Adams v.*

*United States*, 615 F.2d 284, 289 (5th Cir. 1980)).  "It also serves to ease court congestion and

avoid unnecessary litigation." *Bowling*, 740 F. Supp. 2d at 1245 (citation and internal quotations

marks omitted).  "Because the FTCA constitutes a waiver of the government's sovereign

immunity the notice requirements established by the FTCA must be strictly construed." *Bradley*

*v. United States by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citing *Three-M Enters.,*

*Inc.*, 548 F.2d at 295).  But the FTCA's notice requirements "should not be interpreted

inflexibly." *Estate of Trentadue*, 397 F.3d at 853 (citing *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000)).

A proper administrative claim must provide an agency "notice of the facts and circumstances underlying a claim rather than the exact grounds upon which [a] plaintiff seeks to hold the government liable." *Id.* And, to that end, our Circuit has adopted the following criteria for determining whether an administrative claim contains the level of specificity that the FTCA demands:

> [T]he test under § 2675(a) [is] "an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement."

*Id.* at 852–53 (quoting *Dynamic Image Techs., Inc.*, 221 F.3d at 40). A claim need not apprise the agency of "'every conceivable legal theory' or cause of action that could potentially be brought in relation to an injury described in that claim." *Strohm v. United States*, No. 06-4139-SAC, 2007 WL 3120704, at *4 (D. Kan. Oct. 24, 2007) (quoting *Bethel v. United States ex rel. Veterans Admin. Med. Ctr. of Denver, Colo.*, 495 F. Supp. 2d 1121, 1124–25 (D. Colo. 2007)). But a plaintiff cannot present an administrative claim to an agency describing one injury and then sue the federal agency in federal court based on a different set of facts. *Id.* The administrative claim "must provide the defendant with sufficient information to enable the agency to conduct a full investigation of the incident stated by the plaintiff[.]" *Bowling*, 740 F. Supp. 2d at 1246 (citations and internal quotation marks omitted). "If the facts surrounding a possible cause of injury are not discussed in the administrative claim, then that possible cause of injury cannot support a later claim in federal court." *Id.*

If the court finds plaintiff failed to administratively exhaust a claim, it must dismiss the claim without prejudice for lack of jurisdiction. *Gabriel v. United States*, 683 F. App'x 671,

673–74 (10th Cir. 2017) (explaining § 2675(a)'s exhaustion requirement wasn't intertwined with the merits of plaintiff's FTCA claim so the district court lacked jurisdiction and should have dismissed the unexhausted claims without prejudice, rather than converting to summary judgment motion and dismissing with prejudice).

       *ii.*      *Analysis*

Defendant contends that plaintiff's Administrative Claim only satisfied the FTCA's notice requirement for certain claims related to his care at USP Leavenworth, and the court thus lacks jurisdiction over plaintiff's claims about negligent care at other BOP facilities.  Doc. 41 at 8–10.  Defendant argues plaintiff's "passing reference[s]" to USP Terre Haute and FCI Lompoc were insufficient to meet the FTCA's notice requirement because his Administrative Claim, and almost all the facts within it (or in the *Bivens* complaint attached to it), focused on negligent medical care at USP Leavenworth.  *Id.* at 9 n.2–3.  Defendant also argues that plaintiff failed to exhaust any claims for care provided after his transfer from USP Leavenworth since he doesn't describe any facts or wrongful acts committed after that transfer.  *Id.* at 9–10.

Plaintiff responds that his Administrative Claim describes negligent medical care while he was housed at USP Terre Haute and FCI Lompoc, in addition to USP Leavenworth.  Doc. 50 at 6–7 (quoting Doc. 41-1 at 33–34 (Admin. Claim)).  He argues these "facts clearly inform BOP investigators that they should investigate [plaintiff]'s claims starting while he was in custody at USP Terre Haute, not USP Leavenworth[.]"  *Id.* at 7.  Plaintiff doesn't respond to defendant's arguments that his Administrative Claim doesn't describe any facts that would place the BOP on notice of tortious conduct after his stay at USP Leavenworth.  *See id.* at 3–8.  Instead, plaintiff argues generally that the BOP should have asked for more information if they needed it for their investigation.  *See id.* at 7–8.

Defendant replies that plaintiff's general references about USP Terre Haute and FCI Lompoc didn't "sufficiently describe[ ] his injuries" at these facilities to provide the requisite notice.  Doc. 52 at 1.  Defendant notes that plaintiff's *Bivens* complaint attached to the Administrative Claim named specific medical providers at USP Leavenworth as defendants, along with the BOP in its official capacity, and detailed the individual defendants' alleged negligence.  *Id.* at 2–3.  But, the Administrative Claim and *Bivens* complaint never named any medical providers at other facilities as defendants or otherwise, and didn't make any specific allegations about negligent medical care by certain providers at other facilities.  *Id.*  So, defendant maintains that the administrative claim didn't place the BOP on notice that plaintiff was seeking redress for injuries caused by treatment outside USP Leavenworth that it should investigate.  *Id.*

As discussed above, the FTCA's exhaustion requirement is satisfied if the administrative claim includes a specific damage request and "'a written statement sufficiently describing the injury to enable the agency to *begin* its own investigation.'"  *Estate of Trentadue*, 397 F.3d at 852 (quoting *Bradley*, 951 F.2d at 270) (emphasis added).  Thus, if "'an administrative claim serves due notice that an agency should investigate the possibility of particular (potentially tortious) conduct . . . it fulfills the notice-of-claim requirement.'"  *Id.* at 852–53 (quoting *Dynamic Image Techs., Inc.*, 221 F.3d at 40).

Defendant compares plaintiff's Administrative Claim compared to his Second Amended Complaint to *Benally v. United States*, 735 F. App'x 480 (10th Cir. 2018).  Doc. 52 at 3–4.  It contends that because the Administrative Claim provided no details about plaintiff's treating physicians or his treatment at USP Terre Haute, FCI Lompoc, FCI Victorville, FCI Terminal Island, and FMC Lexington, *Benally*'s holding establishes that plaintiff hasn't exhausted those

claims in the Second Amended Complaint and so the court doesn't have jurisdiction to consider them.  *Id.*

The *Benally* plaintiff had surgery to repair a fractured femur.  735 F. App'x at 481.  But, plaintiff remained in pain after surgery and had at least five follow up appointments with the surgeon.  *Id.* at 481–82.  The surgeon noted possible alignment problems with the surgical hardware, but never discussed a need for additional surgery with plaintiff.  *Id.* at 482.  It turned out that the surgical hardware had failed completely and plaintiff had to have a total hip replacement performed at a different hospital.  *Id.*

The *Benally* plaintiff filed two notices with the U.S. Department of Health & Human Services ("HHS").  *Id.*  The first notice described how the first hip replacement surgery had failed a few months after surgery because the equipment separated causing pain and mobility problems.  *Id.*  The notice asserted that the "surgery . . . was performed negligently and below the standard of care," requiring additional surgery and causing permanent damage.  *Id.* Likewise, the second notice alleged the first "hip surgery was mishandled causing [plaintiff] severe pain" and that the surgery "was performed negligently and below the standard of care, causing permanent damage" and requiring additional surgery.  *Id.* at 482–83.  The notices given to HHS never explicitly referenced post-operative care at the first hospital and never named the surgeon or his involvement after the surgery.  *Id.* at 483.

When HHS denied the *Benally* plaintiff's administrative claim, she filed suit in federal court and her suit alleged broader descriptions of her injuries and the source of them.  *Id.*  Her federal complaint included detailed allegations about the surgeon's negligence during post-operative care, as well as during the surgery itself.  *Id.* at 483–84.

The district court dismissed the post-operative care claims for lack of subject matter jurisdiction because plaintiff hadn't provided the required FTCA notice, and plaintiff appealed. *Id.* at 484.  The Tenth Circuit agreed with the district court.  *Id.* at 485–89.  The Circuit explained that the FTCA notice "should give *notice* of the *underlying facts and circumstances* that will form the fabric of the subsequent civil suit[.]"  *Id.* at 485 (citation and internal quotation marks omitted).  "[A]n FTCA notice should be read to 'encompass[ ] any cause of action *fairly implicit* in the facts.'"  *Id.* (quoting *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016)).  While courts "should liberally construe the universe of facts that the FTCA claimant provides . . . [t]hat does not mean, however, that courts should augment those facts to conform to the claimant's subsequent civil complaint."  *Id.*

Even affording the *Benally* plaintiff's administrative claims a liberal construction, the Circuit concluded her notices didn't put HHS on notice about her claims for negligent post-operative care.  *Id.* at 485–86.  Plaintiff's notices focused on the negligently performed surgery, and "made no reference to post-operative care[.]"  *Id.* at 486.  The notices didn't "suggest[ ] negligent conduct by [the surgeon] during that post-operative period," and never mentioned "the various follow-up appointments she attack[ed] in her complaint," or that plaintiff had "any objection to the medical opinions" she received at those appointments.  *Id.*  The notices—"even under the most generous reading"—didn't include any concerns about negligent post-operative care.  *Id.* at 486–87.  So, the Tenth Circuit explained, HHS never received notice of negligent post-operative care that it should investigate.  *Id.* at 487.

In sum, because the *Benally* plaintiff "never identified post-operative agency conduct as the basis for her claimed injury" in her administrative claim, the "government investigator would have no basis to inquire into the quality of her post-operative care."  *Id.* at 488.  And so, "her

administrative notices simply failed to provide the facts and circumstances underpinning her subsequent federal court claim" and thus she didn't satisfy the FTCA's notice requirement and the district court lacked subject matter jurisdiction over her post-operative care claims. *Id.* at 488–89. The Circuit thus affirmed the district court's ruling that it lacked subject matter jurisdiction over the claims for negligent post-operative care. *Id.* at 492.

The holding in *Benally* is consistent with several other holdings by our Circuit. For example, in *Lopez*, it remanded the case to the district court to dismiss the negligent credentialing claim where the administrative claim only described negligence in performing surgery and did not include facts sufficient to give the government reasonable notice "that it needed to investigate whether the VA hospital was negligent in credentialing[.]" 823 F.3d at 975–77. In *Salas v. United States*, the Circuit vacated and remanded the case to the district court instructing it to dismiss for lack of subject matter jurisdiction. 527 F. App'x 813, 816–17 (10th Cir. 2013). It concluded that plaintiff's administrative claim did not refer to the wrongful conduct asserted by the negligent infliction of emotional distress claims. *Id.* In *Staggs v. United States ex rel. Dep't of Health & Human Servs.*, the Circuit affirmed the district court's dismissal of plaintiff's lack of informed consent claim because "given the length and factual specificity of [plaintiff]'s description of her claim without a mention of 'consent' or a suitable synonym, [Department of Health and Human Services] could have reasonably concluded that a claim of lack of informed consent was not intended[.]" 425 F.3d 881, 885 (10th Cir. 2005). In *Estate of Trentadue*, the Tenth Circuit affirmed the district court's holding that plaintiffs' administrative claim provided notice of their intentional infliction of emotional distress claim based on prison officials' conduct following a federal prisoner's death. 397 F.3d at 851. The administrative claim included allegations that prison officials murdered a federal prisoner and "attempt[ed] to

conceal the manner of his death." *Id.*  The Circuit held the administrative claim supported the complaint's claim of intentional infliction of emotional distress based on prison officials' conduct following the federal prisoner's death because it "was based on the same underlying conduct[.]"  *Id.* at 852–53.

In the following four subsections—a through d—the court applies this precedent to specific allegations in plaintiff's Second Amended Complaint.

a.      *Plaintiff failed to exhaust his negligent medical care claims based on conduct occurring before June 2009*

Plaintiff's Administrative Claim states "[s]ince at least May 2008, [he] has experienced severe popping, grinding, decreased range of motion, and severe pain in his right elbow" while housed at USP Terre Haute.  Doc. 41-1 at 33.  But, plaintiff doesn't describe or allude even to any possible negligent medical care actually provided before June 4, 2009.  *See id.* at 33–34. Plaintiff doesn't describe any negligent care on or before that date.  *See id.* at 33 (describing how the BOP "[r]ecogniz[ed] the severity" of his elbow pain and referred him to orthopedic surgeon who recommended surgery).  He then describes how he was approved for surgery on June 4, 2009, but the procedure was never performed.  *Id.* at 33–34.  So, his Administrative Claim doesn't provide the BOP with any notice he was being denied medical care before this time.  *See id.*  While the court recognizes that it should liberally construe the universe of facts described in an FTCA administrative claim, *see Benally*, 735 F. App'x at 485, plaintiff makes absolutely no mention of being denied medical care or negligent acts by anyone within the BOP before June 4, 2009.  *See* Doc. 41-1 at 28–43.

In contrast, the Second Amended Complaint, describes treatment—some negligent— dating back to 2005 based on a failure to provide treatment or surgery for his described ailments. *See* Doc. 36 at 3–4 ¶¶ 7–15.  Since plaintiff's Administrative Claim failed to provide notice of

negligent medical care earlier than a surgery that wasn't performed after its approval on June 4, 2009, he has failed to exhaust any claims for negligent conduct before June 4, 2009. The court thus doesn't have jurisdiction to consider negligence claims based on paragraphs 7–14 of plaintiff's Second Amended Complaint. *See* Doc. 36 at 3–4. Thus the court dismisses without prejudice for lack of subject matter jurisdiction plaintiff's claims to the extent they describe negligent medical care received before June 4, 2009, including conduct described by paragraphs 7 to 14 in the Second Amended Complaint.

> b.   *Plaintiff exhausted his negligent medical care claims for care received at USP Terre Haute and FCI Lompoc beginning June 4, 2009*

Plaintiff's Administrative Claim provides some facts about allegedly negligent care at USP Terre Haute and FCI Lompoc before arriving at USP Leavenworth in his Administrative Claim. He describes his actions seeking care for his right elbow at USP Terre Haute and FCI Lompoc in his Administrative Claim. *See* Doc. 41-1 at 33–34. As noted above, plaintiff first saw an orthopedic specialist at USP Terre Haute on May 21, 2009, who recommended surgery. *Id.* at 33. But, although the surgery was approved on June 4, 2009, it never was performed. *Id.* at 33–34. Plaintiff then was transferred to FCI Lompoc. *Id.* The Administrative Claim asserts that "BOP officials at FCI Lompoc also failed to perform the recommended surgical procedure on [plaintiff's] elbow or provide other constitutionally adequate care for same." *Id.*

Defendant contends these references to plaintiff's treatment at USP Terre Haute and FCI Lompoc don't provide sufficient notice of the facts and circumstances underlying his negligence claims in the Second Amended Complaint tied to his treatment at these facilities to satisfy the FTCA's notice requirement. Doc. 41 at 8–9, 9 nn. 2–3; Doc. 52 at 1, 3–4. Plaintiff argues his Administrative Claim sufficed to put BOP investigations on notice that they should investigate his claims starting at USP Terre Haute and FCI Lompoc. Doc. 50 at 7–8.

In this context, the court questions whether Administrative Claim's brief references to USP Terre Haute and FCI Lompoc, even when the claim is considered on the whole, reasonably could have prompted investigators to investigate negligence claims based on plaintiff's treatment at those facilities. *See Benally*, 735 F. App'x at 490. Indeed, plaintiff submitted his claim to the BOP's North Central Regional Office, which includes USP Leavenworth and USP Terre Haute but not FCI Lompoc. *See* Doc. 41-1 at 6 (Todd Decl. ¶ 6 explaining "[a]dministrative claims must be filed with the regional office where the claim occurred"), 22 (BOP Program Statement explaining claimant should file FTCA notice in regional office where claim occurred), 28 (Administrative Claim). And, when the administrative claim form asked plaintiff to "[s]tate in detail the known facts and circumstances attending the . . . injury . . . , identifying persons . . . involved, the place of occurrence and the cause thereof," plaintiff attached his *Bivens* complaint. Doc. 41-1 at 28. This *Bivens* complaint only named as defendants his medical providers at USP Leavenworth and sought "relief for inadequate medical care provided by the Defendants." *Id.* at 30–33. After briefly describing when plaintiff's elbow pain began, without naming specific providers at USP Terre Haute or FCI Lompoc, plaintiff proceeded to provide detailed factual allegations about who he received treatment from at USP Leavenworth, what dates he was treated, and why he contends the care was negligent. *Id.* at 34–42. Plaintiff specifically sought monetary damages from six individual named defendants, as well as injunctive relief from defendants (including the BOP) in the form of surgical and other treatments for his ailments. *Id.* at 42–43.

In short, his Administrative Claim clearly focused on the care plaintiff received at USP Leavenworth, and not from other facilities. And, plaintiff's Administrative Claim did not include the facts and circumstances about who treated him at USP Terre Haute and FCI Lompoc,

when, or how the conduct was negligent that he now includes in his Second Amended Complaint. *Compare* Doc. 41-1 at 33–34 *with* Doc. 36 at 3–6.

Still, this case presents a different scenario than *Benally* where the plaintiff's administrative claim was devoid of any mention of post-operative care. *See Benally*, 735 F. App'x at 486–87; *see also Lopez*, 823 F.3d at 977 (holding district court lacked jurisdiction because nothing in the claim provided the government notice about negligent credentialing). Here, giving the Administrative Claim its most generous reading, plaintiff has presented BOP some concerns about his failure to receive surgery on his elbow at USP Terre Haute and FCI Lompoc. *See* Doc. 41-1 at 33–34. One can read plaintiff's presentation of these facts in his Administrative Claim—liberally construed—encompass his negligence claims about these facilities in his Second Amended Complaint, but just barely. *See Benally*, 735 F. App'x at 485 (explaining the administrative claim "should give notice of the underlying facts and circumstances that will form the fabric of the subsequent civil suit" and that courts should "liberally construe the universe of facts" provided to encompass "any cause of action fairly implicit in the facts" but should not "augment those facts to conform to" the federal complaint (citations, internal quotation marks, and emphasis omitted)). As noted, plaintiff's Administrative Claim fails to identify his treatment providers and the factual details about their care. But, it does suggest the "possibility of particular (potentially tortious) conduct" at USP Terre Haute and FCI Lompoc because it notes plaintiff was approved for surgery that never was performed while he was housed at these facilities. *Estate of Trentadue*, 397 F.3d at 852. So, like *Trentadue*, BOP had some basis to inquire about plaintiff's care at those facilities. *See Benally*, 735 F. App'x at 487–88 (discussing *Trentadue*); *id.* at 490 (considering whether any aspects of plaintiff's notice "could reasonably have prompted the government to investigate" the claim).

In sum, in light of plaintiff's overall claim—negligent medical care for failure to provide treatment—and the Administrative Claim's reference to awaiting surgery beginning June 4, 2009, at USP Terre Haute, and after his transfer to FCI Lompoc, the court concludes it has jurisdiction to consider plaintiff's claims described in paragraphs 15 through 18 of the Second Amended Complaint.  But, as the court will explain in Part III.B.i. below, plaintiff's negligence claims tied to his treatment at USP Terre Haute and FCI Lompoc fail as a matter of law because they are time barred under the FTCA.

> c.   *Plaintiff exhausted his negligent medical care claims for care received at USP Leavenworth*

Defendant doesn't assert that plaintiff failed to exhaust his negligent medical care claims for care while housed at USP Leavenworth.  *See* Doc. 41 at 8–10.  But, because this court's jurisdiction to consider claims under the FTCA requires administrative exhaustion of the court claims, the court quickly considers whether it has jurisdiction over these claims.  *See* 28 U.S.C. § 2675(a); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (explaining the court has an independent obligation to satisfy itself that subject matter jurisdiction exists).  After reviewing plaintiff's Administrative Claim, the court concludes it sufficiently notified BOP about plaintiff's alleged injuries due to medical negligence at USP Leavenworth for plaintiff's right elbow, left elbow, broken foot, knee, and related pain.  *See* Doc. 41-1 at 28–43.  The court thus has jurisdiction to consider the claims described in paragraphs 19 to 42 of the Second Amended Complaint.

> d.   *Plaintiff failed to exhaust any claims arising from wrongful conduct after his transfer from USP Leavenworth*

Defendant argues plaintiff failed to allege any facts in his Administrative Claim to place BOP on notice of medical negligence claims arising from conduct after plaintiff's transfer from

USP Leavenworth to FCI Victorville in March 2017.  Doc. 41 at 9.  Defendant argues plaintiff submitted his Administrative Claim after his transfer to FCI Victorville, so plaintiff could have included facts complaining about his care at FCI Victorville but chose not to include them.  *Id.* at 9 n.4.  Since plaintiff failed to provide any facts about his care at any facility after his stint at USP Leavenworth, defendant argues, this court doesn't have jurisdiction to consider his claims based on care provided at FCI Victorville, FCI Terminal Island, and FMC Lexington.  *Id.* at 9–10.

Plaintiff doesn't respond to defendant's argument that he failed to provide any facts placing BOP on notice of claims arising after he was transferred from USP Leavenworth.  *See* Doc. 50 at 3–8.  Instead, plaintiff argues generally that BOP should have notified him and asked him for more information necessary to complete an investigation.  *Id.* at 7–8.  Plaintiff provides no case law to support his argument that he is excused from providing the notice required by the FTCA when the BOP has received notice of other instances of alleged negligence to investigate at other facilities.

Defendant is correct.  Plaintiff's Administrative Claim doesn't provide any facts about his care after his transfer from USP Leavenworth.  *See* Doc. 41-1 at 28–43.  Plaintiff's Administrative Claim describes the care—or lack of it—from five USP Leavenworth medical professionals and the BOP as a whole.  Plaintiff describes, in detail, the alleged continuing failure by medical professionals at USP Leavenworth to respond adequately to his medical conditions.  *Id.*  But, plaintiff's Administrative Claim doesn't even make a passing reference to the facilities or the care received after he was transferred from USP Leavenworth.  Notably, plaintiff submitted this Administrative Claim almost a year *after* his transfer from USP Leavenworth to FCI Victorville.  *See* Doc. 41-1 at 28 (Administrative Claim stamped with

29

"Received Jan 19 2018"); Doc. 36 at 12 ("Barroca was transferred from USP Leavenworth to FCI Victorville Medium II in California on March 9, 2017"). Yet, plaintiff doesn't describe any fact that could place BOP on notice of a cause of action based on negligent medical care after his transfer from USP Leavenworth. *See Lopez*, 823 F.3d at 976–77 (assessing whether facts in administrative claim could support plaintiff's negligent credentialing claim in his lawsuit and holding district court lacked jurisdiction to adjudicate such a claim because he hadn't provided administrative notice of the claim); *Foxx v. United States*, No. 11-3020-SAC, 2012 WL 4344071, at *2 (D. Kan. Sept. 21, 2012) ("Thus to the extent plaintiff relies on allegations of negligence occurring after he filed his administrative tort claim . . . the court has no jurisdiction to consider such claims in this FTCA action.").

Consistent with these conclusions, the court thus dismisses without prejudice plaintiff's claims based on medical care after he was housed at USP Leavenworth, which include paragraphs 43 to 56 of the Second Amended Complaint (Doc. 36).

     *iii.*    *Conclusion*

The court has jurisdiction to consider claims based on the conduct described in paragraphs 15 to 42 of the Second Amended Complaint. It is without jurisdiction to consider claims related to conduct in paragraphs 7 to 14 and 43 to 56 of the Second Amended Complaint, and it thus dismisses those claims without prejudice.

**B.**    **Summary Judgment Because Some Claims Are Time Barred**

Defendant makes two arguments that some of plaintiff's claims are time barred. *First*, defendant argues the FTCA's two year statute of limitations bars claims for conduct occurring more than two years before plaintiff filed his Administrative Claim. *Second*, it argues Kansas's four year statute of repose for medical malpractice claims applies, extinguishing any claims

based on conduct at USP Leavenworth occurring four years before plaintiff filed suit in federal

court.  The court addresses the two arguments, in turn, below.

> ### i.        The FTCA's Two Year Statute of Limitations

> #### a.        Legal Standard

Under the FTCA, "[a] tort claim against the United States shall be forever barred unless it

is presented in writing to the appropriate Federal agency within two years after such claim

accrues[.]"  28 U.S.C. § 2401(b).  A medical malpractice claim "accrues for purposes of [this]

two-year limitation, when the plaintiff knows both the existence and the cause of the injury."

*Bradley*, 951 F.2d at 270 (citation and internal quotation marks omitted).  "Accrual need not

await awareness by the plaintiff that his injury was negligently inflicted."  *Id.* (citation and

internal quotation marks omitted).  Instead, once a plaintiff knows of his injury and its probable

cause—regardless whether he knows if it was negligently inflicted—plaintiff has a duty "to

exercise reasonable diligence to seek medical and legal advice once he learns he has been injured

and can identify who may be responsible[.]"  *Espinoza v. United States*, No. 95-1325, 85 F.3d

640, 1996 WL 249488, at *1 (10th Cir. May 13, 1996) (unpublished table opinion).

"[T]he FTCA's time bars are nonjurisdictional and subject to equitable tolling."  *United*

*States v. Kwai Fun Wong*, 575 U.S. 402, 420 (2015).  "The statute of limitations is an affirmative

defense, so the defendant, as the moving party [for summary judgment], bears the burden of

demonstrating that there is no material fact in dispute on the issue of whether the statute of

limitations bars the claim."  *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268,

1274 (10th Cir. 2014) (citations omitted).  "While the statute of limitations is an affirmative

defense, when the dates given in the complaint make clear that the right sued upon has

extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.

*Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  "Under 'long-settled equitable-tolling principles, generally a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'"  *Reid v. United States*, 626 F. App'x 766, 768 (10th Cir. 2015) (quoting *Barnes v. United States*, 776 F.3d 1134, 1150 (10th Cir. 2015)).

> *b.*     *Analysis*

Plaintiff filed his Administrative Claim January 19, 2018, putting the FTCA's two year time bar at January 19, 2016.  Defendant argues many of plaintiff's claims accrued outside this two year statute of limitations and thus it is entitled to summary judgment on those claims.  Doc. 41 at 11–14.  Defendant also argues equitable tolling does not apply to plaintiff's claims because plaintiff has failed to allege a reason why he could not have discovered his injuries and their cause.  *Id.* at 12.  Plaintiff responds to defendant's argument in two ways.

*First*, plaintiff argues he didn't know the cause of his injuries because at "[e]very single institution, prior and post to the filing of the claim, plaintiff was informed that he would receive surgery, thus, plaintiff did not know a cause of action accrued until the date of filing the claim."  Doc. 50 at 9.  And, because he didn't know the cause of his injuries, plaintiff argues his claims could not have accrued before FTCA's two year limitation period.  *Id.*  *Second*, plaintiff responds that the continued denial of treatment by BOP medical professionals constituted a continuing tort and so the claim continued to accrue until "the date of the last injury, the date of the unfilled promise for surgery and relief from pain that never came."  *Id.* at 9–10.  The court addresses each argument, below.

      1.  *Plaintiff's knowledge of the existence and cause of his injuries*

Contrary to plaintiff's first argument, his claims accrued once he learned about his injuries and their cause, and plaintiff's belief that he eventually would receive the care did not toll the statute of limitations or otherwise prevent his claims from accruing before January 19, 2016. "Determination of when a claim accrues is a matter of federal, not state, law." *Harvey v. United States*, 685 F.3d 939, 947 (10th Cir. 2012) (citation, internal quotation marks, and text alteration omitted). As explained above, a cause of action accrues under the FTCA when plaintiff is injured, or, "in a medical malpractice action, when the plaintiff has discovered both his injury and its cause." *Id.* (citation and internal quotation marks omitted). "The injury must arise from the negligence or wrongful act or omission of a government employee, not solely from a condition that existed before the medical treatment at issue." *Id.* (citing 28 U.S.C. § 1346(b)(1)). And, the FTCA applies the law of the state where the purportedly negligent acts occurred to determine substantive liability. *Id.*

To determine the accrual date of a claim for failing to treat a preexisting condition producing a more serious injury, the Tenth Circuit considers "when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition[.]" *Id.* at 948 (citation and internal quotation marks omitted). The Tenth Circuit focuses on knowledge that the injury is worsening, caused by lack of treatment and "not the pre-existing injury that brought the patient to the doctor's door." *Id.* at 949. Once a plaintiff "comes to believe that [a government employee] ha[s] mistreated him," the clock governing plaintiff's ability to bring an FTCA action begins to run. *See Bray v. United States*, 764 F. App'x 774, 777 (10th Cir. 2019). This is so because once a plaintiff knows of any alleged injury resulting from the actions of medical professionals, plaintiff has "an

affirmative duty to seek medical and legal advice regarding his alleged injuries at that time."
*Bradley*, 951 F.2d at 270.  "Lack of knowledge of the injury's permanence, extent, and
ramifications does not toll the statute."  *Harvey*, 685 F.3d at 947(citation and internal quotation
marks omitted).

Here, plaintiff's Administrative Claim alleges wrongful conduct going back to June 2009.
Doc. 41-1 at 33–34.  In the Second Amended Complaint, plaintiff alleges potentially wrongful
conduct going back to 2005, when he started signing up for sick call for the pain in his right
elbow "but was only seen by Physician's Assistants."  Doc. 36 at 3 ¶¶ 7–8.  But, plaintiff didn't
file his Administrative Claim until January 19, 2018.  Doc. 41-1 at 28.  FTCA claims which
accrue more than two years before filing an administrative claim are time barred.  *See Hoery v.
United States*, 324 F.3d 1220, 1222 (10th Cir. 2003).  So, the court considers below which of
plaintiff's claims accrued before January 19, 2016, and thus are barred by two FTCA's two year
limitation period.

Plaintiff's claims based on his right elbow accrued no later than February 3, 2015.
Plaintiff's Second Amended Complaint alleges detailed efforts he made to seek treatment and
surgery on his right elbow and he alleges he continually was informed he would receive
treatment for it.  *See* Doc. 36 at 3–7 ¶¶ 7–24.  But plaintiff knew, or should have known about
injuries to his right elbow and their cause, at the latest, by February 3, 2015, when Dr. Develbiss
informed him that the damage to his right elbow was "irreparable" and that the BOP's failure to
treat the condition for over a decade had contributed to the damage.  *See id.* at 7 ¶ 24.  This is not
a case like *Harvey*, where "nothing in the record indicate[d] that Mr. Harvey was told . . . it
would have been possible to reduce the fracture if it had been treated earlier."  685 F.3d at 949
n.3.  Here, the Second Amended Complaint explicitly alleges plaintiff knew of his injuries

related to his right elbow and their cause—medical neglect spanning over a decade—no later than February 3, 2015.  Once plaintiff knew of his injuries and their cause, the two-year clock on his FTCA claim started to run.  Plaintiff's claims for negligent medical care on his right elbow accrued before January 19, 2016, and are thus barred by the FTCA's two year limit.  This includes plaintiff's allegations about treatment of his elbow at USP Terre Haute, FCI Lompoc, and USP Leavenworth.  *See* Doc. 36 at 4–7 ¶¶ 15–24.

Plaintiff's claims based on care of his left elbow are also time barred.  The Second Amended Complaint describes plaintiff's concerns that his left elbow would continue to deteriorate without treatment.  *See id.* at 6–9 ¶¶ 19–23, 26–27, 29–30.  On November 14, 2014, x-rays revealed plaintiff's left elbow was developing degenerative osteoarthritis—the same condition he suffered in his right elbow.  *Id.* at 6 ¶ 23.  In May 2015, plaintiff complained about left elbow pain again and "worried that his left elbow is now becoming degenerative like his right [elbow]."  *Id.* at 8 ¶ 26.  On June 2, 2015, new x-rays revealed "serious prominent osteophyte formation" and "Dr. Aulepp still refused to provide orthopedic specialist review."  *Id.* at 8–9 ¶ 29.  Then, in September 2015, plaintiff reported to BOP medical with a tendon tear in his left elbow and Dr. Clark ordered plaintiff to ice it.  *Id.* at 9 ¶ 30.  "Despite this injury and known osteophyte formation and pain, no further orthopedic specialist review or treatment was provided."  *Id.*  Plaintiff's injuries from non-treatment of his left elbow at USP Leavenworth accrued no later than September 2015 when he reported to BOP medical and was denied treatment.  Indeed, plaintiff already had learned in February 2015 that this condition could become irreparable if untreated.  *See id.* at 7 ¶ 24.  The Second Amended Complaint thus shows plaintiff knew about his injuries based on treatment of his left elbow and their cause before January 19, 2016.  Thus, plaintiff's claims for care for his left elbow before January 19, 2016, are

time barred.  This includes plaintiff's allegations in paragraphs 19–23, 26–27, and 29–30 of the Second Amended Complaint.

Plaintiff's injuries for medical treatment on his right knee accrued no later than June 3, 2015.  Plaintiff reported to sick call on April 8, 2015, with "bilateral knee pain" and plaintiff was informed that his right knee appeared to have some meniscus damage.  *Id.* at 7–8 ¶ 25.  Plaintiff specifically requested an injection of Euflexa and was denied that treatment despite his objections to the suggested treatment—cortisone shots.  *See id.*  And again, on June 3, 2015, plaintiff reported pain in his right knee and Nurse Campbell confirmed a possible cartilage tear.  *Id.* at 8 ¶ 28.  At this point, Nurse Campbell acknowledged plaintiff needed a referral to an orthopedic specialist "but refused . . . unless [plaintiff] took the cortisone shots in his knee."  *Id.*  Plaintiff already had expressed his refusal to take cortisone shots, believing it would further the injury.  *Id.*  And he alleges on June 3, 2015, plaintiff knew "Campbell intentionally prevented [plaintiff] from receiving and obtaining necessary medical care of his right knee."  *Id.*  The Second Amended Complaint establishes plaintiff knew about his injuries and their cause when BOP healthcare providers denied him adequate medical care to his right knee on April 8, 2015, and June 3, 2015.  So, plaintiff's claims related to care on his right knee before January 19, 2016, in paragraphs 25 and 28 of the Second Amended Complaint are time barred.

Plaintiff asserts, with no support or evidence, that he could not know he was injured because he continually was promised he would receive treatment.  Doc. 50 at 9.  But these promises didn't prevent plaintiff from learning of his alleged injuries from medical care he already had received or worsening of his existing injuries.  *See Bradley*, 951 F.2d at 270.  Based on the Second Amended Complaint, plaintiff knew he was injured by the negligent acts of medical professionals in the BOP at USP Terre Haute, FCI Lompoc, and USP Leavenworth

before January 2016 for injuries to his right elbow, left elbow, and right knee.  So, the FTCA

bars his claims based on this wrongful conduct before January 2016.  This means plaintiff's

claims in paragraphs 15–30 of the Second Amended Complaint are barred as a matter of law,

unless plaintiff's second argument—that failure to provide proper care constituted a continuing

tort—changes the accrual dates determined above for his claims.  The court now turns to

plaintiff's continuing tort doctrine argument.

> ### 2.   *Neither the continuous treatment doctrine or continuing tort doctrine apply to plaintiff's claims*

Plaintiff and defendant employ two separate doctrines in their papers:  (1) the continuing

tort doctrine and (2) the continuous treatment doctrine.  Defendant's initial motion argues the

continuous treatment doctrine doesn't toll plaintiff's claims because plaintiff knew about his

injuries and their cause before the two year limit applied.  *See* Doc. 41 at 12, 12–13 n.7.  Plaintiff

responds that the "Continuing Tort Doctrine" applies to his claims and resets their accrual dates

to a date within the limitations period because the medical negligence alleged constituted a

continued or repeating injury.  *See* Doc. 50 at 9–10.  Defendant replies that plaintiff "asserts that

the continuous treatment doctrine saves those claims that accrued prior to January 19, 2016—the

date two years before he filed his administrative claim with BOP."  Doc. 52 at 5.  But, defendant

argues the continuous treatment doctrine doesn't apply and, even if it did, plaintiff's claims still

are time barred.  *Id.* at 5–6.

Both of these doctrines affect the timeliness of an FTCA claim, but they operate under

different mechanisms.  And, as explained below, neither doctrine applies to save plaintiff's

claims here.

Under the continuing tort doctrine, "where a tort involves a continuing or repeated injury,

the cause of action accrues at, and limitations begin to run from, the date of the last injury."

*Maston v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001) (citation and internal quotation marks omitted).  *See also Syms v. Olin Corp.*, 408 F.3d 95, 108 (2d Cir. 2005) ("The continuing tort doctrine is based on the idea that certain torts continually give rise to new causes of action, which can be brought notwithstanding the expiration of the limitations period for prior causes of action."); *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (holding continuing tort doctrine didn't apply to plaintiff's defamation claim because the book's publication constituted a single incident causing the harm).  If the tortious conduct has continued, the cause of action continues to accrue, and a plaintiff employing the continuing tort doctrine can recover for injuries sustained within the limitations period, but not for injuries for which the limitations period has expired.  *See Hoery v. United States*, 324 F.3d 1220, 1222, 1224 (10th Cir. 2003).  This is so because "[c]ontinuing torts do not avoid the statute of limitations; rather, such torts remain timely not because the limitations period is tolled but because the cause of action continues to accrue."  *Id.* at 1222.

But, the continuing tort doctrine can apply only if the state where the tortious conduct occurred recognizes the tort as a continuing tort.  *See Cline v. S. Star Cent. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203, 1214 (D. Kan. 2005); *see also Syms*, 408 F.3d at 108–09; *see also Hoery*, 324 F.3d at 1222.  The doctrine does not apply "where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress."  *Cline*, 356 F. Supp. 2d at 1214 (citations and internal quotation marks omitted); *see also Maston*, 240 F.3d at 1237–38 (holding plaintiff couldn't invoke continuing tort doctrine despite exposure to injurious and repetitive vibrations over his career because plaintiff knew of his back injury and should have known about its cause years before his retirement).

The continuing tort doctrine doesn't apply to plaintiff's claims here.  Plaintiff's continuing tort argument is premised on a theory that each act of treatment alleged in his Second Amended Complaint, by itself, didn't cause his injuries but, instead, these acts constituted a continuing course of conduct that caused his injuries over time.  *See* Doc. 50 at 9–10.  So, he contends, while negligent treatment continued—*i.e.*, until he received the medical care he desired and thought he would receive from government medical providers at a prison—his cause of action hadn't accrued yet.  *Id.*  Accordingly, plaintiff contends his claims accrued within the FTCA's statute of limitations.

But, plaintiff cites no law to support his theory that he has presented continuing tort claims—*i.e.*, that his claims for negligent treatment by medical care providers at USP Terre Haute, FCI Lompoc, and USP Leavenworth constituted a continuing injury that didn't accrue while he awaited surgery.  Plaintiff hasn't identified any continuing tortious conduct by the medical providers identified as treating his elbows and knee at USP Terre Haute, FCI Lompoc, and USP Leavenworth in paragraphs 15–30 of his Second Amended Complaint continuing into the FTCA's two year window.  *See Salas v. United States*, No. 11-cv-00784-CMA-KMT, 2012 WL 4097303, at *3 (D. Colo. Sept. 18, 2012), *aff. in relevant part*, 527 F. App'x 813 (10th Cir. 2013) (explaining that, to invoke the continuing tort doctrine, a plaintiff must allege a continuing course of connected tortious conduct that continues into the applicable limitations period); *Roehrs v. Conesys, Inc.*, No. 3:05-CV-829-M, 2005 WL 3454015, at *3 (N.D. Tex. Dec. 14, 2005) (explaining the continuing tort doctrine "applies only to repeated acts that occur over an extended period of time" but doesn't apply to "a series of distinct instances of conduct").  And, plaintiff never cites any Kansas, Illinois, or California law to support his belief that his negligent medical care claims are continuing torts.  *See Cannon v. United States*, 338 F.3d 1183, 1192–93

(10th Cir. 2003) (explaining for an FTCA action asserting a continuing tort claim, the claim will continue to accrue only as long as the tortious conduct continues and noting that a court must consult the state law where the act occurred to determine if a tort constitutes a continuing tort); *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 631 (10th Cir. 2008) (noting in a parenthetical that Kansas law does not consider negligence claims to qualify as continuing torts); *Marzolf v. Gilgore*, 914 F. Supp. 450, 452–53 (D. Kan. 1996) (rejecting plaintiff's argument that a series of treatments by health care providers constituted a single act that wasn't complete until plaintiff's final treatment and holding plaintiff couldn't recover for injuries from treatment received outside Kansas's statute of repose).

Instead, and as discussed above, the Second Amended Complaint alleges facts demonstrating he was aware of his injuries and their cause before January 2016. And, it doesn't allege any facts indicating plaintiff was prevented from seeking redress for his claims earlier. So, applying the accrual principles summarized in subsection a, above, the court holds plaintiff's continuing tort doctrine argument doesn't make his claims in paragraphs 15–30 of the Second Amended Complaint timely. His knowledge of his injuries and their cause before January 2016 triggered the accrual of his claims and the FTCA's statute of limitations bars those claims. *See Bradley*, 951 F.2d at 270.

The continuous treatment doctrine, on the other hand, sometimes applies to toll the statute of limitations in medical malpractice actions where the claimant has received continuous treatment for his injuries. Plaintiff never explicitly argues that the continuous treatment doctrine applies to toll the FTCA's statute of limitations. But, because plaintiff proceeds pro se and his continuing tort doctrine argument may overlap in some respects with a continuous treatment

argument—*i.e.*, each rely on a continued course of conduct by, or continued relationship with the alleged negligent actors—the court briefly addresses this doctrine as well.

"The continuous treatment doctrine is an exception to the strict discovery rule . . . that a medical malpractice case accrues under the FTCA when the claimant first knows of the injury and its cause." *Stephenson ex rel. Stephenson v. United* States, 147 F. Supp. 2d 1106, 1109 (D.N.M. 2001). "Under the continuous treatment rule, the limitations period for filing a claim is tolled, under certain circumstances, for the period during which the injured party is receiving continuous treatment for the injury caused by the defendant's alleged negligence." *Id.* (citing *Miller v. United States*, 932 F.2d 301, 304 (4th Cir. 1991)). Two rationales support this doctrine: (1) "it is not reasonable to expect a patient who is in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries" and (2) or fairly can't expect a patient "to interrupt corrective treatment by instituting suit" against the doctor or hospital treating him because the doctor-patient relationship is "based upon trust in their medical skills." *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1081 (2d Cir. 1988).

Not all courts recognize the continuous treatment doctrine. *Miller*, 932 F.2d at 304; *see also Stephenson*, 147 F. Supp. 2d at 1110-11 (explaining Tenth Circuit hasn't definitively expressed whether it would adopt the continuous treatment doctrine to toll the FTCA's statute of limitations). And courts who do employ the doctrine use a variety of approaches. Some courts will apply the rule only to cases where the patient isn't able to recognize the doctor's actions may have caused the injury while still receiving treatment. *Stephenson*, 147 F. Supp. 2d at 1109. But once plaintiff knows about the injury and what acts caused it, these courts no longer will apply the continuous treatment rule to toll the statute of limitations. *Id.* at 1109–10; *see also Outman v. United States*, 890 F.2d 1050, 1053 (9th Cir. 1989) (explaining "the continuous

treatment doctrine was not available to toll the statute of limitations in medical malpractice cases under the FTCA where the plaintiff knows of the acts constituting the negligence" despite continued treatment).  Other courts apply a more lenient approach, continuing to toll the statute of limitations for as "long as the patient remains under continuous treatment for the injury, by the same physician or under that physician's general control[.]"  *Stephenson*, 147 F. Supp. 2d at 111–12 (recognizing the continuous treatment doctrine and employing the more lenient tolling approach); *see also Miller*, 932 F.3d at 304 (explaining the limitations period is tolled while "the claimant remains under the continuous treatment of a physician whose negligence is alleged to have caused the injury" and that the claim "accrues when the continuous treatment ceases" (internal quotation marks omitted)); *Ulrich*, 853 F.2d at 1080 (recognizing "where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA cause of action arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment").

Here, even assuming that our Circuit would embrace the continuous treatment doctrine and utilize the more lenient tolling approach, plaintiff's claims in paragraphs 15–30 of the Second Amended Complaint are time barred.  The doctrine only applies when a claimant continually is treated for the same condition by the same doctor.  *See Miller*, 932 F.3d at 304–05 (explaining "the rationale for this tolling theory only permits its application when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction"); *see also Espinoza*, 1996 WL 249488, at *2 (rejecting plaintiff's continuous treatment tolling argument because plaintiff didn't receive continuing treatment for his back from the VA physician whose negligence was alleged to have caused his injury); *Stephenson*, 147 F. Supp. 2d at 1110 (explaining the rule focuses on the physician-

patient relationship and requires continued treatment by the same physician). If a claimant asserting an FTCA claim is treated over time by different government doctors at different facilities, the claimant cannot invoke the continuous treatment doctrine for claims against doctors who only treated plaintiff for the problem outside the statute of limitations. *Miller*, 932 F.3d at 304–05. And, plaintiff's allegations about his elbow and knee treatments at USP Terre Haute, FCI Lompoc, and USP Leavenworth accrued when the treatment of those medical providers for those problems ceased—which, according to the allegations in the Second Amended Complaint, occurred before January 19, 2016.

The rationales for applying the continuous treatment doctrine also don't apply here. The court finds the approach applied by the federal court for the Southern District of New York, on similar facts, persuasive on this issue. In *Barbaro v. United States ex rel. Federal Bureau of Prisons FCI Otisville*, a federal prisoner attempted to invoke the continuous treatment doctrine for his negligent medical care claims. No. 05 CIV. 6998(DLC), 2006 WL 2882975, at *3 (S.D.N.Y. Oct. 10, 2006). The *Barbaro* plaintiff alleged "the medical staff failed to provide him with 'the medically required and necessary treatment' for the neck, back, and shoulder injuries throughout his time at Otisville." *Id.* at *1. "In particular, he allege[d] that [BOP medical staff] refused to order magnetic resonance imaging scans ('MRIs') and other diagnostic studies, evaluation by specialists, and various required surgeries." *Id.* (internal quotation marks omitted). And, plaintiff alleged, they didn't offer physical therapy or medication that would alleviate his pain. *Id.* He continually reported his complaints while in BOP custody. *Id.* The government moved to dismiss plaintiff's FTCA claims based on Barbaro's allegations about substandard care, arguing the claims accrued outside the FTCA's statute of limitations. *Id.* at

43

*2. But, Barbaro tried to invoke the continuous treatment doctrine to toll the statute of limitations. *Id.* at *3.

The district court rejected plaintiff's argument, concluding that neither of the rationales for invoking the doctrine existed. *Id.* It explained, "Barbaro demonstrated repeatedly that he was aware of the alleged deficiency of the treatment he was receiving" and indeed he continually had complained to prison officials about his treatment. *Id.* The court noted there was no question plaintiff "was aware that he was not receiving the treatment that he believed was necessary as early as his first few months at Otisville[,]" because he had filed formal complaints and informed medical staff about the treatment he required. *Id.* at *2. This demonstrated *Barbaro*'s plaintiff "knew the critical facts of injury and causation" and that he "was not afraid of taking issue with his doctors' decisions while in their care[,]" so the court refused to apply the continuous treatment doctrine. *Id.* at *2–3.

Just as in *Barbaro*, plaintiff's Administrative Claim, attached *Bivens* complaint, and Second Amended Complaint demonstrate that plaintiff discovered the acts of medical providers who caused his injuries before January 2016. He requested certain treatments that were denied and continually complained about the government actors' delays and failures to provide treatment. And, he even filed a *Bivens* action in December 2016 against medical providers at USP Leavenworth. Because plaintiff knew he was receiving inadequate medicate care and already had complained about it, the rationales for applying the continuous treatment doctrine don't apply even if plaintiff had alleged continuous treatment by medical providers at USP Terre Haute, FCI Lompoc, and USP Leavenworth had continued into the applicable limitations period. Plaintiff's claims for conduct before January 19, 2016, are time barred and the continuous treatment doctrine does not apply to extend the statute of limitations.

### c.   Conclusion

The court holds plaintiff's claims for the medical care described in paragraphs 15–30 of the Second Amended Complaint accrued before January 2016 and thus are time barred by the FTCA's two year statute of limitations.  The court thus grants summary judgment in defendant's favor against those claims.

### ii.      Kansas's Four Year Statute of Repose

Defendant also argues that Kansas's four year statute of repose for medical malpractice claims extinguishes any claim for negligent medical conduct at USP Leavenworth occurring before February 8, 2015.  Doc. 41 at 10–11.  Plaintiff doesn't challenge or otherwise respond to defendant's statute of repose argument.  For reasons explained below, the court rejects defendant's statute of repose argument and thus denies defendant's motion for summary judgment against plaintiff's claims for care at USP Leavenworth before February 8, 2015, based on Kansas's repose statute.  The court concludes that the Kansas statute of repose was tolled while plaintiff pursued his Administrative Claim, a conclusion, it explains below.

### a.    Legal Standard

An FTCA action against the government is permitted when plaintiff presents circumstances "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  In short form, the FTCA applies substantive state law to determine if a tort cause of action exists.  *See Miller*, 932 F.2d at 303.

Kansas has a statute of repose that provides "in no event shall" an "action arising out of the rendering of or failure to render professional services by a health care provider" "be commenced more than four years beyond the time of the act giving rise to the cause of

action." Kan. Stat. Ann. § 60-513(c). This statute of repose is a substantive aspect of law that eliminates a cause of action after a certain amount of time has passed. *Bonin v. Vannaman*, 929 P.2d 754, 761 (D. Kan. 1996) ("A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. It is substantive." (citation and internal quotation marks omitted)). Kansas's statute of repose doesn't allow a medical malpractice action filed more than four years after the acts of the health care providers that give rise to the cause of action. *See id.* at 772 (explaining plaintiff, to file a timely medical malpractice claim, had to file within the statute of repose—which ran from the date when the doctor allegedly failed to diagnosis plaintiff's scoliosis). Kansas law doesn't apply the continuous treatment doctrine to toll the statute of repose in medical malpractice cases. *See id.* at 772–74; *see also Vacura v. Sliter*, No. 110,383, 329 P.3d 1254, 2014 WL 3843295, at *5 (Kan. Ct. App. Aug. 1, 2014) (unpublished).

   *ii.*  *Analysis*

   Here, defendant argues the four year statute of repose bars any of plaintiff's claims for negligent care at USP Leavenworth for acts occurring before February 8, 2015—four years before the date he filed his Complaint in federal court. Doc. 41 at 10-11. This encompasses paragraphs 19–24 of the Second Amended Complaint. *See* Doc. 36 at 6–7. And, defendant argues, nothing can toll Kansas's statute of repose. Doc. 41 at 11 (citing a non-FTCA case, *Marzolf v. Gilgore*, 914 F. Supp. 450, 453–54 (D. Kan. 1996), where our court held the continuing treatment or related argument can't toll the Kansas statute of repose). But, our court has held that when a plaintiff asserts an FTCA action, Kansas's statute of repose is "tolled during the pendency of plaintiff's administrative procedures, for any claims not already barred before

plaintiff began the administrative process." *John Doe AM v. United States*, No. 17-2314-CM, 2017 WL 4469845, at *3 (D. Kan Oct. 6, 2017). Because the FTCA requires a claimant to exhaust administrative remedies before filing suit, our court explained that "the FTCA administrative process preempts Kan. Stat. Ann. § 60-513(c)'s statute of repose when the mandated use of the administrative process would otherwise cause a claim to be barred by the statute of repose." *Id.* After tolling Kansas's statute of repose for the period when plaintiff was pursuing his Administrative Claim, plaintiff's claims about acts occurring between November 2014 to February 8, 2015, are not barred by Kansas's four year statute of repose. So, the court denies defendant's motion seeking summary judgment against the claims relying on paragraphs 19–24 of the Second Amended Complaint based on Kansas's statute of repose.

## IV.    Conclusion

Nothing in plaintiff's Administrative Claim provided notice to the BOP of plaintiff's negligent medical care claims for conduct before June 2009 or after plaintiff was transferred from USP Leavenworth. So, this court does not have jurisdiction to consider plaintiff's unexhausted claims for conduct described in paragraphs 7 to 14 and 43 to 56 in the Second Amended Complaint. The court dismisses these claims without prejudice for lack of subject matter jurisdiction.

The court also holds claims related to conduct described in paragraphs 15 to 30 of the Second Amended Complaint are barred by FTCA's two year limit because plaintiff knew that he was injured and receiving inadequate medical care before January 2016. So, the court grants summary judgment in defendant's favor against the claims described in those paragraphs.

Finally, the court denies summary judgment based on Kansas's state of repose for plaintiff's claims in paragraphs 19 to 24 of the Second Amended Complaint.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Partial Dismissal, or in the Alternative, Motion for Partial Summary Judgment (Doc. 40) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** claims related to conduct described in paragraphs 7 to 14 and 43 to 56 of the Second Amended Complaint are dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED THAT** summary judgment is granted for defendant against claims related to conduct described in paragraphs 15 to 30 of the Second Amended Complaint because they are time barred.

**IT IS SO ORDERED.**

**Dated this 27th day of January, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**