IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ROBERT BARROCA,** | |
| **Plaintiff,** | |
| v. | Case No. 19-2688-DDC-TJJ |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**MEMORANDUM AND ORDER**

Plaintiff Robert Barroca broke his right foot while running stairs at the prison where he was incarcerated. He asserts that the prison's medical officials improperly treated his broken foot, causing it to take twice as long to heal. Appearing pro se,[1] plaintiff brings this suit against defendant United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. In an earlier Memorandum and Order, the court dismissed several aspects of plaintiff's suit and granted summary judgment against other aspects. *See generally* Doc. 59. So, only a small slice of plaintiff's suit remains: a claim against defendant for medical malpractice based on allegedly negligent care of his broken right foot. Defendant now moves for summary judgment against that claim too, arguing that plaintiff has failed to provide expert testimony to support his claim, as required by Kansas law. *See* Doc. 76. Because plaintiff's deficiency is fatal to his claim, the court grants summary judgment for defendant. The court explains this ruling, below.

---

[1] Because plaintiff appears pro se, the court construes his filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court can't serve as a pro se plaintiff's advocate. *See id.*

I.       **Background**

In his Second Amended Complaint, plaintiff alleges he broke his right foot on January 22, 2016, while running stairs at the United States Penitentiary (USP) Leavenworth, where he then was incarcerated. Doc. 36 at 9 (Second Am. Compl. ¶ 31). Plaintiff alleges he tried to seek medical care the same day, but prison medical staff refused to see him for another three days. *See id.* (Second Am. Compl. ¶¶ 31–32). When staff eventually attended to plaintiff, they performed an x-ray and confirmed that his right foot was broken. Medical staff then placed plaintiff's foot in a plaster cast. But, plaintiff alleges, the physician's assistant and nurse who applied the cast "both admitted to not knowing how to apply a cast and put it on wrong." *Id.* at 9–10 (Second Am. Compl. ¶ 33). Plaintiff alleges that the two medical officials "failed to bend [his] foot flat as the cast was applied which resulted in the cast hardening in the shape of [an] L." *Id.*

After casting plaintiff's foot, medical staff directed plaintiff not to place any weight on the cast. While plaintiff alleges that staff provided him with crutches, he alleges he could not navigate the prison's stairs, bathrooms, or showers without placing weight on the cast. *Id.* at 10 (Second Am. Compl. ¶¶ 34–35). He alleges he asked medical staff to recast his foot, but that they refused. *Id.* (Second Am. Compl. ¶ 35). And when plaintiff reported that the cast was pressing into his shin, he alleges that medical staff simply "tape[d] a rubber heal under the cast to lift it off of and from touching the ground." *Id.* (Second Am. Compl. ¶ 36).

One month later, plaintiff saw an outside orthopedist, Dr. Kenneth Wertzberger, and Physician's Assistant Shane Alford. *Id.* (Second Am. Compl. ¶ 37); *see also* Doc. 77-3 at 2–3 (OrthoWertz treatment notes, dated February 26, 2016). Dr. Wertzberger took x-rays of plaintiff's foot, which showed that the fracture remained unchanged from the x-ray taken right

2

after the injury.  *See* Doc. 77-4 at 4 (Wertzberger Decl. ¶ 5.d.i.); *see also* Doc. 77-7 at 3–4 (Bureau of Prisons Health Services Notes, dated Mar. 9, 2016).  At that time, a prison physician removed the old cast and put plaintiff's foot in a new cast.  Doc. 36 at 10 (Second Am. Compl. ¶ 38); Doc. 77-7 at 3–4 (Bureau of Prisons Health Services Notes, dated Mar. 9, 2016).

One month later, in April 2016, x-rays showed plaintiff's foot was beginning to heal.  Doc. 77-4 at 4 (Wertzberger Decl. ¶ 5.e.i.).  So, physicians removed the cast and placed plaintiff in a walking boot.  Doc. 36 at 11 (Second Am. Compl. ¶ 39).  X-rays taken in May and June 2016 showed continued healing.  Doc. 77-4 at 4 (Wertzberger Decl. ¶¶ 5.f.i.–5.h.i.).  During this period, plaintiff alleges that Dr. Wertzberger directed him to begin weaning himself off the walking boot.  Doc. 36 at 11 (Second Am. Compl. ¶ 40).  And by July 2016, plaintiff alleges Dr. Wertzberger told him he no longer needed the walking boot.  *Id.* (Second Am. Compl. ¶ 41).

In short, plaintiff alleges that but for the negligence by medical staff at the prison, his broken foot would've healed twice as fast.  He asserts that medical staff was negligent by refusing to see him immediately after he broke his foot, by allowing him to walk around on a broken foot for three days, and by incorrectly casting his foot and then refusing to correct it when he complained.  *See id.* (Second Am. Compl. ¶ 41).

## II.   Legal Standard

Summary judgment is appropriate when the moving party demonstrates "no genuine dispute" about "any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the court applies this standard, it views the evidence and draws reasonable inferences in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  But the court "need not make unreasonable inferences or adopt one party's version of the facts if the

3

record doesn't support it." *Harte v. Bd. of Comm'rs*, 864 F.3d 1154, 1173 (10th Cir. 2017). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And, an issue of fact is "material" if it can "affect the outcome of the suit under the governing law[.]" *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion[.]" *Celotex Corp.*, 477 U.S. at 323. A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation cleaned up). To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation cleaned up). When deciding whether the parties have shouldered their summary judgment burdens, the court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III. Analysis**

"The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 141 S. Ct. 740, 745 (2021). "Under the FTCA, Congress granted a limited waiver of sovereign immunity by making the Federal Government liable to the same extent as a private party for certain torts of federal employees." *Ohlsen v. United States*, 998 F.3d 1143, 1153 (10th Cir. 2021) (quotation cleaned up). The

statute provides that the United States may face liability for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because "[s]tate substantive law applies to suits brought against the United States under the FTCA[,]" the court applies Kansas law[2] to plaintiff's FTCA claim. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004).

Defendant, the United States, argues that it deserves summary judgment against plaintiff's medical malpractice claim because plaintiff has failed to satisfy the requirements for that claim under Kansas law. Specifically, defendant argues that plaintiff (1) fails to provide supporting expert testimony, as Kansas law requires, and (2) fails to demonstrate that his case falls within the narrow "common knowledge" or res ipsa loquitur exceptions to the expert testimony requirement. Defendant's right on both points. And so, the court grants defendant summary judgment against plaintiff's claim.

### A.  Plaintiff Fails to Support His Claim with Expert Testimony

Under Kansas law, a medical malpractice plaintiff must prove:

> (1) The health care provider owed the patient a duty of care and was required to meet or exceed a certain standard of care to protect the patient from injury; (2) the provider breached this duty or deviated from the applicable standard of care; (3) the patient was injured; and (4) the injury proximately resulted from the breach of the standard of care.

*Drouhard-Nordhus v. Rosenquist*, 345 P.3d 281, 286 (Kan. 2015).

---

[2]  For tort claims, Kansas applies "the doctrine of *lex loci delicti*, meaning the law of the place where the tort was committed or where the wrong occurred." *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1031 (D. Kan. 2018) (quotation cleaned up). "Where the wrong occurred is generally considered to be the place where the injury was suffered." *Id.* Plaintiff sustained the injury to his right foot and received allegedly negligent treatment at the United States Penitentiary in Leavenworth, Kansas. So, Kansas law applies.

"The plaintiff in a medical malpractice case bears the burden of showing not only the doctor's negligence, but that the negligence caused the injury." *Hare v. Wendler*, 949 P.2d 1141, 1146 (Kan. 1997) (quotation cleaned up). "Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation." *Id.* (quotation cleaned up). At the summary judgment stage, plaintiff must show that he has adduced evidence that could permit him to carry this trial burden. *See Drouhard-Nordhus*, 345 P.3d at 288 (affirming summary judgment against plaintiff's medical malpractice claim because plaintiff "fail[ed] to come forward with evidence that the patient would not have died but for [defendant's] alleged breach of the standard of care"); *see also Hare*, 949 P.2d at 1148 (affirming summary judgment against plaintiff's medical malpractice claim because of a "fundamental problem" *i.e.*, "his lack of expert medical causation evidence").

Here, plaintiff has designated three experts who, he contends, could provide sufficient testimony for his claims to survive summary judgment: (1) Dr. Carolyn Hettrich, (2) Dr. Ken Wertzberger; and (3) Physician's Assistant Shane Alford. *See* Doc. 69 (Pl.'s Rule 26(a)(2) Disclosure). Plaintiff asserts that all three could testify that prison medical staff failed to provide adequate care, thus prolonging the healing process for his broken foot. But plaintiff has failed to show that these three experts would help carry his burden under Kansas law. Two reasons supports this conclusion.

*First*, none of the witnesses could testify as experts at trial. If a party has "retained or specially employed [a witness] to provide expert testimony in the case[,]" then the party must provide a written report from that expert witness. Fed. R. Civ. P. 26(a)(2)(B). That report must

6

contain the witness's opinions, the facts and data supporting those opinions, and the witness's qualifications to form those opinions, among other things. *Id.* And, the party offering a retained expert's testimony must provide that report when it discloses its expert witnesses. *Id.* Plaintiff didn't satisfy any of these requirements. When he disclosed his three expert witnesses, he failed to provide a written report from any of them. *See* Doc. 69 (Pl.'s Rule 26(a)(2) Disclosure). Nor has he done so since. Defendant has advised that plaintiff hasn't provided an expert report for any of his designated witnesses. *See* Doc. 77 at 3–4. And plaintiff implicitly has conceded as much. *See* Doc. 84 at 3 ("[T]he government has no idea [p]laintiff[']s intended line of questioning or what plaintiff intends these experts to testify regarding the facts material to the issues presented"). As a result, plaintiff can't use expert testimony to establish the applicable standard of care or prove causation.

*Second*, plaintiff fails to show how any of his designated witnesses would provide favorable testimony at trial. While the witnesses couldn't testify as experts at trial, as treating physicians (and assistants), they still could testify to their personal knowledge and observations about plaintiff's injuries. *See Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party."); *Hildebrand v. Sunbeam Prods., Inc.*, 396 F. Supp. 2d 1241, 1250 (D. Kan. 2005) (explaining that "treating physicians" can testify about "causation, diagnosis, prognosis, and other opinions arising out of the treatment without any expert report"). Even so, plaintiff doesn't explain how any of the witnesses' testimony would help carry his burden. Plaintiff concedes that Dr. Hettrich didn't treat his broken right foot that's at issue here. Doc. 84 at 3; *see also* Doc. 77-5 (Dr. Hettrich's treatment notes of plaintiff's elbow pain three years after plaintiff broke his right foot). So, Dr. Hettrich couldn't

7

provide testimony based on personal knowledge of treating plaintiff's foot.  And, for Dr. Wertzberger and P.A. Alford, plaintiff has failed to provide "a summary of the facts and opinions to which the witness is expected to testify[,]" as required by Fed. R. Civ. P. 26(a)(2)(C).  Plaintiff merely asserts that both Dr. Wertzberger and P.A. Alford "can testify regarding the subject matter of this case" and "can testify regarding the evidence supporting plaintiff[']s claims."  Doc. 69 at 1–2.

Even putting aside those conclusory assertions, the record reflects that Dr. Wertzberger's testimony wouldn't help plaintiff establish that defendant's alleged negligence caused his injury.  Defendant has provided a declaration from Dr. Wertzberger, where he testified that the type of fracture plaintiff sustained in his right foot "heals 99.9% of the time no matter how you treat it."  Doc. 77-4 at 3 (Wertzberger Decl. ¶ 5.c.i.); *see also id.* (Wertzberger Decl. ¶ 5.a.) (declaring that he "cannot state whether [plaintiff] was treated with callousness and disregard" because "there are medical problems that don't matter how they are treated, they are going to be okay by the natural course of things").  Crucially, Dr. Wertzberger also testified that plaintiff's broken right foot healed "in the usual timeframe."  *Id.* at 4 (Wertzberger Decl. ¶ 5.i.).  The summary judgment record doesn't contain any testimony from P.A. Alford, and plaintiff hasn't offered any evidence to suggest that his testimony would differ from Dr. Wertzberger's.

In sum, plaintiff has failed to adduce expert testimony capable of supporting his medical malpractice claim, as Kansas law requires.  So, plaintiff only has one narrow pathway to shoulder his burden.  The court turns to that narrow path next, in Part III.B.

> **B.     Plaintiff Fails to Satisfy the "Common Knowledge" or Res Ipsa Loquitur Exceptions**

Recognizing that he can't provide expert testimony to establish the standard of care and to prove causation, plaintiff maintains that he still could prove his claim at trial even without

8

such testimony. He contends that "the doctrine of res ipsa loquitur" and "the common knowledge exception" apply to his case. Doc. 84 at 4. The court disagrees.

Plaintiff's right about the abstract proposition that Kansas law does not require expert testimony for every medical malpractice claim. But the exception to the expert rule applies only when a defendant's conduct is so obviously negligent that jurors could conclude from their "common knowledge" that a defendant has breached an accepted standard of care that has caused plaintiff's injury. *See Hare*, 949 P.2d at 1147. This common knowledge exception applies only when "the lack of reasonable care or the existence of causation is apparent to the average layman from common knowledge or experience." *Watkins v. McAllister*, 59 P.3d 1021, 1023 (Kan. Ct. App. 2002). Whether the exception applies is a question of law for the court to decide. *Perkins v. Susan B. Allen Mem'l Hosp.*, 146 P.3d 1102, 1105 (Kan. Ct. App. 2006). The "application of the common knowledge exception is extremely limited" to patently obvious breaches of the standard of care. *Munoz v. Clark*, 199 P.3d 1283, 1288–89 (Kan. Ct. App. 2009) (listing cases where a "surgeon operat[ed] on the wrong limb" or where "a patient is dropped from a table" as examples where the common knowledge exception applied); *Perkins*, 146 P.3d at 1106 (collecting more common knowledge exception cases, like when a physician left a sponge inside a patient after surgery, and when a "surgeon removed 60% of the wrong vertebral disc"); *Schwartz v. Abay*, 995 P.2d 878, 880 (Kan. Ct. App. 1999) (collecting more cases where a nurse failed to call a doctor when a woman went into labor and suffered severe complications and where a "physician left a plastic tube in patient's throat for 36 hours after surgery").

Kansas law recognizes a second exception to the expert rule. This second exception applies under "the doctrine of res ipsa loquitur" which applies "in a medical malpractice action only where a layman is able to say as a matter of common knowledge and observation, or from

the evidence can draw an inference, that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised." *Funke v. Fieldman*, 512 P.2d 539, 550 (Kan. 1973); *see also Frans v. Gausman*, 6 P.3d 432, 439 (Kan. Ct. App. 2000) ("[R]es ipsa doctrine is seldom applicable in actions for damages by patients against physicians."). As the Kansas Supreme Court has explained,

> Three conditions must be met for the doctrine of res ipsa loquitur to apply. First, the thing or instrumentality causing the injury or damage must be within the exclusive control of the defendant. Second, the injury must be of the kind that ordinarily would not occur in the absence of someone's negligence. Third, the injury must not be due to the contributory negligence of plaintiff.

*Savina v. Sterling Drug, Inc.*, 795 P.2d 915, 933 (Kan. 1990).

In short, in Kansas law the "doctrines of 'common knowledge' and 'res ipsa loquitur' are applied infrequently and are limited to situations in which it would be apparent to a layperson that an injury or an outcome would not have occurred if due care had been exercised." *Warner v. Floyd*, No. 16-4143-SAC-KGS, 2018 WL 742359, at *3 (D. Kan. Feb. 7, 2018). And because the two exceptions substantially overlap, if plaintiffs fail to satisfy one, they usually fail to satisfy the other. *See Esposito v. United States*, 165 F. App'x 671, 676 (10th Cir. 2006) (applying Kansas law and concluding that, because common knowledge exception didn't apply, "*res ipsa loquitur* [was] unavailable as well").

Here, neither exception applies. Begin with the common knowledge exception. Plaintiff contends it's "common knowledge that a broken right foot is supposed to be properly cast." Doc. 84 at 4. While the court agrees with plaintiff at a very high level of generality, this argument won't suffice to satisfy the common knowledge exception. The proper standard of care (*i.e.*, how to cast a broken foot) isn't within a lay person's common knowledge. In other words, the proper standard of care isn't so obvious that no expert testimony is needed to discern the standard. *See Robles v. United States*, No. CV 15-4864-KHV, 2017 WL 364598, at *6 (D.

10

Kan. Jan. 25, 2017) (declining to apply the common knowledge exception because "the care and treatment of plaintiff's wrist injury is not something within the common knowledge of the jury"), *aff'd*, 703 F. App'x 652, 655 (10th Cir. 2017) (reasoning that it was "not clear without expert testimony whether an initial misdiagnosis of a patient's wrist pain as being caused by a sprain as opposed to a ruptured tendon is 'patently bad' care").

Likewise, here, causation isn't so obvious that it excuses the requirement for expert testimony. Plaintiff contends that but for defendant's negligence, his foot would've healed in three months instead of six. But the court finds that the proper healing timeframe for a broken foot isn't within a lay person's common knowledge. And, in any event, the only *evidence* in the summary judgment record about the standard recovery period for a broken foot rejects—not supports—plaintiff's claim. Dr. Wertzberger testified that plaintiff's broken foot healed "in the usual timeframe." Doc. 77-4 at 4 (Wertzberger Decl. ¶ 5.i.). Thus, the court concludes the common knowledge exception doesn't apply to the causation issue either.

Given that conclusion, the res ipsa loquitur exception also can't apply here. *See Esposito*, 165 F. App'x at 676 (applying Kansas law and concluding that, because the common knowledge exception didn't apply, "*res ipsa loquitur* [was] unavailable as well"). To be sure, the record suggests that plaintiff's foot didn't begin to heal until a prison physician re-cast his foot one month after his initial injury and treatment. But for that one-month period, plaintiff's cast—the thing plaintiff asserts caused him injury or damage—wasn't within defendant's exclusive control, as required for the res ipsa loquitur exception to apply. *Savina*, 795 P.2d at 933. Plaintiff himself concedes that he placed weight on the cast, against prison medical staff's instructions to him. *See* Doc. 36 at 10 (Second Am. Compl. ¶ 34) ("Although [plaintiff] was directed to not bear any weight on the cast, no medical staff or any Bureau official provided

11

[plaintiff] with the means of doing so. *Although [plaintiff] was provided crutches*, he must walk back and forth to medical and the chow hall to eat." (emphasis added)).

Also, defendant argues that any prolonged period of healing was due to plaintiff's contributory negligence in placing weight on the cast. That causation dispute alone precludes the court from applying the res ipsa loquitur exception. *See Frans*, 6 P.3d at 439 (refusing to apply res ipsa loquitur where the "identity of the cause of the injury was hotly contested" and it was possible that "plaintiffs were negligent in some degree"); *see also Hervey v. United States*, No. 19-4033-SAC-ADM, 2020 WL 1809748, at *4 (D. Kan. Jan. 24, 2020) (declining to apply res ipsa loquitur where "multiple factors outside the control of [treating physician] may have had an impact upon plaintiff's mental health and the problems plaintiff suffered may have occurred for reasons other than [physician's] negligence").

In sum, the common knowledge and res ipsa loquitur exceptions rarely apply. And plaintiff has failed to establish that his case is one of those rare cases where one of the exceptions apply. Without this escape hatch, the requirement for expert testimony remains a requirement for plaintiff's case to survive summary judgment. Plaintiff hasn't provided the requisite expert testimony to support his medical malpractice claim. So, defendant is entitled to summary judgment against the claim. *Roesch v. Clarke*, 861 F. Supp. 986, 993 (D. Kan. 1994) ("Without expert medical testimony that defendant was negligent, the court must grant defendant summary judgment.").

### IV.    Conclusion

For those reasons, the court grants defendant summary judgment against plaintiff's medical malpractice claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 76) is granted.  Because this ruling concludes all claims asserted in the case, the court directs the Clerk to enter a final judgment and close the case.

**IT IS SO ORDERED.**

**Dated this 10th day of May, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
